Hunt *vs.* Jackson Formby's guardian.

connection with other proofs for the Courts to inquire at all into the propriety of the contract.

Judgment affirmed.

JOHN M. HUNT, plaintiff in error *vs.* JACKSON FORMBY'S guardian, defendant in error.

1. Where a bill was brought for specific performance of a contract for the sale of land, and a bond for titles was attached as an exhibit to the bill, and was admitted by the answer:

*Held,* That it was not error in the Court to permit such bond to go in evidence without other or further proof of its execution.

2. Where the party gave notice in writing of his absolute refusal to comply with such contract of sale :

*Held,* That the charge of the Court below to the effect that proof of tender after such notice was not necessary, was not error, but in conformity with the rulings of this Court in 12th Georgia, 154.

3. Where the defense set up to a bill for specific performance is the incapacity of the party to enter into such contract, and upon this question several witnesses have been introduced, some dozen testifying as to his derangement, and reciting facts upon which their opinion was based, all concurred in the general impairment of his mental faculties, but several stated that he had ordinarily attended to his own business, and made his own trades, and the evidence for complainant denied the fact, and the intrinsic evidence of the transaction exhibited no sufficient unreasonableness as to inadequacy of price, or that he did not fairly comprehend, in its effect, the nature of the transaction, but on the contrary, that he did:

*Held,* That while we recognize the rule as laid down by Chancellor Kent, in his exhaustive disquisition of the learning and authority in 6th John's Chancery Report, 225, upon the discretionary powers of Courts of equity in such applications for specific performance, sustained, as it is, by a galaxy of English Chancellors, and while we recognize the proposition, that where a party elects his remedy in a Court of equity, it is devolved upon him, by the forum and the jurisdiction he invokes, that he must show affirmatively his clear right to the remedy before he will be entitled to his decree for his specific performance.   Yet, under our law, equity jurisdiction rests in the Superior Courts, and a jury is a part of our chancery system ;  and where a question of fact has been fairly submitted to them, which will always, and of justice be pre-

sumed, where there is no exception to the charge of the Judge presiding at the trial, and the jury have found for the complainant, and the Judge below refused to grant a new trial, upon the authority of *Davis vs. Smith*, 30th Georgia, 263, and *Raden vs. Tompkins*, decided at the present term, to the effect that where the question is one of fact, and there is sufficient evidence to sustain it, and no rule of law was violated in submitting the case to the jury, and the Court below has refused a new trial, this Court will not interfere.

An adhesion to this rule is essential to the administration of justice, and cannot be departed from without an unwarranted invasion of the established principles controlling the decisions of this Court. See WARNER, Judge, concurring.

Evidence.   Tender.   Specific Performance.   Before Judge KIRBY.   Floyd Superior Court.   January Term, 1870.

This cause is reported in the opinions.

UNDERWOOD & ROWELL, for plaintiff in error.

WRIGHT & FEATHERSTON; T. W. ALEXANDER, for defendants.

LOCHRANE, Chief Justice.

This was a bill originally brought by the guardian of Fromby against John M. Hunt, for *specific performance.* The bill alleges as follows: On the 28th day of August, 1848, Formby, being then a minor, purchased certain lands from John M. Hunt, which are described.   The purchase-money agreed on was $450 00, for which he gave his note, due 25th December thereafter, and took from Hunt his bond for titles; he tendered the full amount of this note to Hunt, requesting him to make titles to the lands, which he refused to do.   The bill prays specific performance, offering specifically to perform his own part of the agreement, and otherwise contains the usual proper averments and exhibits.   The answer of Hunt to this bill was made by William H. Wood, who appears, upon the record, to be his guardian.   The answer commences by the words: "The answer of John M. Hunt, a lunatic, by his guardian, William H. Wood."   The answer states that

Hunt *vs.* Jackson Formby's guardian.

at the time mentioned in the bill, at which the trade took place, the defendant was insane; that advantage was taken of him, and a gross fraud perpetrated; that the consideration was inconsiderable, and, with these statements, admits the general charges of the bill; that he was ready to deliver back the note of the party, which was made while he was an infant, and submits the incompetency of Hunt to contract, and the fraud practiced by the inadequacy of price, etc. This answer was filed in 1852. The case came on for trial at the January Term, 1870, of Floyd Superior Court. The plaintiff submitted his bond for titles, and other evidence, and the defendant produced evidence on the subject of his insanity. The Court refused to charge as requested, relative to the tender, which was excepted to, as well as the introduction of the bond with proof of its execution, which was excepted to. The jury found for the complainant. A motion, made for a new trial, upon the ground, among others, that the verdict was strongly and decidedly against the weight of the evidence, was overruled by the Court. The evidence for the defendant amounted to some thirteen witnesses, who testified generally to his insanity, stating facts upon which their opinion was based. Some six of these witnesses, however, testified that he was able to attend to ordinary business. The facts recited by the witnesses showed sufficient to sustain their opinion that his mind was seriously impaired. Some of them speak of him as crazy; some as a lunatic; some that his mind was fractured; some that he had hallucinations upon religious subjects, but all concurring in a general impairment or derangement of his mind. The complainant and the two witnesses that were with him, and some two others, testified, in the main, to the contrary. The evidence as to the value of the land varied, some estimating it over $1,600 00.

Under the facts in this case, we are called upon to review the law governing proceedings in Courts of equity for specific performance. We lay it down as a general proposition, that the jurisdiction of a Court of equity in matters of specific

performance is not compulsory upon the Court, but is discretionary, to be exercised under rules we will hereafter lay down. The opinion of Chancellor Kent, in Seymore vs. Delancy, 6 Johnson's Chancery Reports, 225, is an exhaustive disquisition of the learning and authority upon this subject. He therein presents, in support of this general proposition, the opinion of Lord Eldon, of Lord Somers, Lord Maccelsfield, Lord Talbot, Lord Hardwick, Lord Alvanly, and Lord Rosylin, to the effect that a Court of equity must be satisfied that the claim for a deed is fair, and just, and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, before it will interpose with this extraordinary assistance; if there be any well-founded objection on any of these grounds, the practice of the Courts is to leave the party to his remedy at law for compensation in damages. The distinction throughout is taken between the power of setting aside the contract and decreeing its execution. Judge Kent held that the power of awarding specific execution of contracts for the sale of land rested in sound judicial discretion, and was not to be applied to cases that were hard, or unfair, or unreasonable, or founded on very inadequate considerations. This same doctrine has been generally enunciated by the Courts on this continent; *vide* 19 Mer., 398; 2 Beasly, New Jersey, 207; 6 Brown, 2457; 1 Stockton, 332; 19 Arkansas, 51.

The modification of the rule may be found in Howard vs. Moore, 4 Sneed, 317, Tennessee, *Chance vs. Beale*, 20 Georgia, 143, in which this Court laid down the rule: "Where a contract for the sale of land is in writing, is certain and fair in all its parts, is for an adequate consideration, and capable of being performed, it is just as much a matter of course for a Court of equity to decree a specific performance of it as it is for a Court of law to give damages for it in other cases." Judge Lumpkin, delivering the opinion, prefaces it with an assent to the general doctrine, in these words: "While it is true that it is discretionary with Courts of equity to decree

specific performance, or turn the parties over to the remedy at law, yet, (and then follows the head notes just recited,) we lay down, as a general proposition, where a party elects his remedy in a Court of equity, the duty is devolved upon him by reason of the forum and jurisdiction which he invokes; that, to entitle him to a decree of specific performance, he must show, affirmatively, his clear right to the remedy." And such is the doctrine found in the case of Morrey vs. Farmers' Loan and Trust Company, 14 New York, 302. We find in the case of Hanna vs. Phillips, 1 Grant's Cases, Pennsylvania, 253, that, on the refusal of the wife to sign the deed, being dissatisfied with the contract, the Court reviews the exercise of this power where her signature was necessary. Inadequacy of price, under the modern authorities, is held not to be sufficient to refuse a decree of specific performance, except the inadequacy is so great as to induce the opinion of unfairness, amounting to fraud and inequality, in the contract; but where the inadequacy is blended with other additional ingredients, which demonstrates to the Court some unreasonable advantage, particularly if there be any question of the capacity of the contracting party, it would authorize the Court to refuse its aid and remit the parties to their strictly legal remedies. In the case, in 6 Johnson, occasional incapacity of attending to business, resulting from habitual intoxication, which had been a matter of public notoriety in the village, was held to give that additional ingredient, coupled with the inadequacy of price, to require the Court to refuse its aid to enforce a specific performance of so hard and so extravagant a bargain, gained from an habitual drunkard in the last year of his life, and just before his infirmities had begun to incapacitate him entirely for business.

The facts in this case exhibit to the Court from the proof a much stronger incapacity than that in the case referred to. The thirteen witnesses referred to show a condition of facts in connection with Hunt's incapacity about the time of this trade, that make out a very strong case of mental disturb-

ance, if not actual insanity.    We cannot omit noticing the
fact, that this testimony comes from his neighbors, who had
daily opportunity of intercourse with him, and whose credi-
bility and competency give more than the usual import of
verity to their statements.    In addition to this he appears, by
guardian, and while the record and the evidence of his lunacy
is not before us, they may, nevertheless, be legitimately pre-
sumed to be the action of the Court upon proper proceed-
ings in the premises.    But the difficulty of this case arises
upon the fact that equity jurisdiction in this State is vested
in the Superior Court, and a jury, under our chancery prac-
tice, is a part of our equity system.    And the facts of this
case have been submitted to the jury, under the charge of
the Court, which we are bound to hold was a fair and just
presentation of the law, as it has not been excepted to on this
subject, and they have found against Hunt; and the Judge
below refused a new trial.    This Court has held, in *Davis
vs. Smith,* 30th Georgia, 263, and in *Raden vs. Tomp-
kins,* decided at this term, to the effect, that where the ques-
tion is one of fact, and there is sufficient evidence to support
it, and no rule of law was violated in submitting the case to
the jury, and the Court has refused a new trial, this Court
will not interfere.    An adhesion to this rule is essential to
the administration of justice, and cannot be departed from
without an unwarranted invasion of the established princi-
ples controlling the decisions of this Court; and we have
examined this record patiently and critically to see if there
is anything to withdraw it from its application.

On the point raised as to the admission of the bond without
proof of its execution, we find no sufficient legal reason.    The
bond was a part of the pleadings attached as an exhibit to the
bill and admitted by the answer, and was, under the facts in
this case, properly admitted.    As to the question raised upon
the tender, the decision of this Court in 12th Georgia, 154,
settles this question.    The refusal to comply with this bond
for titles gave the other party a right to maintain his action

without even tendering the purchase-money. But in this case there was evidence of the fact of tender before the jury, the effect of which they could properly consider. As to the infancy of Formby at the time of the trade, it was such a contract as by the ratification of his guardian would authorize him to maintain a bill in equity for specific performance. Gerard *vs.* Bradly, 7 Indiana, 600.

We, therefore, come back to the main controlling question in this case. Did the jury find contrary to the weight of the evidence? It is a conceded proposition that insanity is a good defense or reason to set aside contracts, however specially executed. When the complainant invoked the jurisdiction of equity he invoked its rules, the leading one of which is that Courts of equity will set aside contracts of idiots, lunatics and other persons *non compos mentis*. And one of the illustrations given by this Court in 7th Georgia, 493, is where the party has no clear and full understanding of the consequences of his act; for example, is not cognizant that it strips him of his property and vests it in another, or disinherits his children, he is to be held and taken as incapable of consenting, and is insane. While the proof in this case shows aberration and an evident derangement of the mental faculties, we are not satisfied, taking the whole evidence together, that he was so incapacitated; nor was there such inadequacy of price as would justify the Court in holding that the chancery power exercised by the Superior Court in this case was illegally abused. Under all the circumstances, therefore, of the case, while we are not fully satisfied with the verdict of the jury, we, nevertheless, feel constrained to affirm the judgment of the Court below.

Judgment affirmed.

WARNER, Judge, concurring.

This is a bill filed by the complainant against the defendant for a specific performance of a contract for the sale of a tract of land, the complainant offering, on his part, to pay

the purchase-money and interest due thereon.    The defend-
ant objects to the performance of the contract on the ground
that he was *insane* at the time the contract was made.    It
appears from the evidence in the record that in the month
of August, 1848, on Saturday, the contract for the sale of
the land was made for the sum of $450 00, a fair price as
lands were selling in that neighborhood at the time.    The
writings were not executed on that day as the defendant was
engaged in saving his fodder, but the parties were to meet at
Johnson's the next Monday and close the trade.    On Mon-
day, when the parties met at Johnson's, the defendant pro-
posed to cancel the trade; said his wife was opposed to the
sale, which the plaintiff declined to do.    The plaintiff then
executed his note to the defendant for the sum of $450 00,
payable on the 25th December thereafter, and the defendant
executed and delivered his bond to the plaintiff in the sum
of $900 00, conditioned to make a good and sufficient title
to the land on the payment of the note recited therein.    On
the 4th of October, 1848, the defendant wrote a letter to the
plaintiff, who resided in another county, notifying him that
he would not make a title to the land until compelled by
law, as he was not in his proper mind at the time he made
the contract, and therefore was not competent to make it,
which letter is in the record.    In the fall of 1849, plaintiff
went to the house of defendant to tender him the money for
the land, found defendant in bed sick, told him he had come
to pay him for the land, provided he would make a deed to
it.    Defendant spoke but once, and said he should not give
up his land.    Stafford, a witness, states that subsequent to
this transaction, he asked defendant why he did not take the
money; defendant replied, " that he knew how to fool them."
There were a number of witnesses introduced on both sides
as to the sanity of the defendant at the time of making the
contract, and upon this point in the case the testimony is
conflicting, though several of the defendant's witnesses testify
that he was capable of attending to his own business, did

Hunt *vs.* Jackson Formby's guardian.

his own trading, and was a hard working, industrious man. The witnesses prove a good deal of strange, eccentric conduct on the part of the defendant. The land is now worth from $1,600 00 to $2,000 00. This case has been pending in Court for twenty years, and there have been two verdicts of two special juries in favor of the complainant.

On the last trial, the jury decreed a specific performance of the contract by the defendant, on the complainant's paying the principal and interest due on the note up to the 15th October, 1849, allowing the defendant compensation for the improvements made on the land. The defendant moved for a new trial on the grounds, that the verdict was contrary to law; that the verdict was strongly and decidedly against the weight of the evidence; that the Court erred in admitting the bond for title in evidence without proof of the execution thereof, and that the Court erred in its charge as to the law in regard to the tender of the money. In my judgment, there was no error, in view of the facts of this case, in admitting the bond in evidence, or in the charge of the Court as to the tender of the money. The bond was set forth in the bill, and admitted by the defendant in his answer. The defendant refused to perform the contract, on his part, absolutely. The complainant, in his bill, offered to perform it on his part by paying what was due by the terms of the contract. If the defendant was insane at the time of making the contract, it was not binding on him, either in a Court of law or in a Court of equity, and that was *the* question in the case for the jury to decide. And there having been two concurring verdicts of two special jurys in the county of the defendant's residence, in favor of his sanity and capacity to make the contract, and there being sufficient evidence in the record to sustain the verdict, according to the repeated rulings of this Court, there was no error in the Court below in refusing the new trial. The question of sanity or insanity is a question of fact. *Eccentricity* of character is not *insanity*, and when all the evidence in this record is closely scrutinized,

the motives of the defendant in endeavoring to get rid of this contract, considered, which are so clearly manifested by him, from the day he proposed to cancel it at Johnson's, up to the time of the trial, it is extremely difficult for me to say that the verdict is not right under that evidence. As a general rule, it may be safely said, that those persons who are, in fact, insane, are the last to discover or to admit it; whereas, the defendant in this case appears to have discovered that he was insane shortly after making the contract for the sale of his land, and to have notified the plaintiff of that fact by letter. There is no error alleged in the record as to the charge of the Court to the jury in submitting the question of the defendant's mental capacity to make the contract, and we must presume that the Court properly instructed them as to the principles of law and equity applicable to that point in the case. When a contract for the sale of land is in writing, and the parties have the capacity to contract, when it is certain and fair in all its parts, is for an adequate consideration, and capable of being performed, it is just as much a matter of course for a Court of equity to decree a specific performance of it as it is for a Court of law to give damages for a breach of it: *Chance vs. Beall,* 20 Georgia Reports, 142.

McCay, Judge, dissented, but furnished no opinion.