WOODWARD and others *v.* JEWELL and others.[1]

*(Circuit Court, S. D. Georgia, W. D.* October, 1885.)

**1. USURY—ACTION BY COMMISSION MERCHANT.**
Where mutual dealings were had between a mill-owner and his commission merchants, whereby the latter have made advances and served the former as his agents for a period of 12 years, rendering stated accounts monthly, which were admitted to be correct, it is too late to plead usury in defense of a bill filed by the commission merchants to enforce the payment of a balance ascertained to be due them.

**2. SAME—CHARGING INTEREST ON MONTHLY BALANCES.**
It is not usurious to charge interest on balances agreed to be due at the monthly settlements, when the parties conducted their business in the manner stated.

**3. CONTRACT—TWO INSTRUMENTS EXECUTED AT SAME TIME.**
Where two instruments are executed at the same time, between the same parties. relative to the same subject-matter, they are to be taken in connection as forming together the several parts of one agreement.

**4. VENDOR AND VENDEE—LAND SUBJECT TO INCUMBRANCE.**
Where a creditor takes from a debtor deeds to lands to secure his debt, and at the same time executes an instrument giving to the debtor the "full right" to sell the lands and make titles, stipulating, however, that the proceeds of such sales shall "go to the credit" of the debtor, a purchaser from the debtor under such power to sell takes a good title. nor, in the absence of allegations and proof of collusion and fraud between the debtor and the purchaser, is the latter to be held responsible for the misapplication of the purchase money.

In Equity.
*Hill & Harris* and *W. E. Jackson,* for complainants.
*Lanier & Anderson,* for defendants.

SPEER, J. Jewell was a cotton-mill owner and planter, residing in this district; Woodward, Baldwin & Co. are commission merchants residing in the state of New York. Jewell would ship the products of his mill to Woodward, Baldwin & Co., they would sell the same on commission, rendering to him monthly an account of the proceeds. They would make advances to him to enable him to carry on his business, and these mutual dealings had continued from about the year 1870 to April, 1884. On the seventeenth of January, 1878, by instruments in writing then executed Jewell admitted an indebtedness to

[1] Reported by Walter B. Hill, Esq., of the Macon bar.

Woodward, Baldwin & Co., amounting to $30,000. To secure this sum he gave them deeds to lands elsewhere and to the lands involved in the issue before the court, a tract known as the "Hurt Place," and another known as the "Homestead Tract," in Baldwin county. On the same day, viz., the seventeenth of January, 1878, Woodward, Baldwin & Co. executed an instrument by which they authorized Jewell to sell the lands he had conveyed to them, and to apply the proceeds to the discharge of his indebtedness. The language of this last instrument is, "The said Woodward, Baldwin & Co. further agree that the said Jewell shall have full right and permission to sell the property named in said deeds, and make titles thereto, the proceeds of said sale *to go to the credit* of the said Woodward, Baldwin & Co." This instrument refers to the deeds made by Jewell, is in consideration of the same, and, in the opinion of the court, they all constitute one and the same contract, and Jewell had three years in which to pay this money, and he failed to pay it. In the mean time, however, he had sold the Hurt place and the Homestead tract to S. P. Myrick and to Mrs. Daniel, co-respondents. Woodward, Baldwin & Co. went into possession of all the other lands conveyed by Jewell's deeds to them, and selling the same, reduced his indebtedness to $4,099.13. They now file this bill against Myrick, Mrs. Daniel, and Jewell, and they seek to subject the two tracts of land mentioned to the payment of this balance.

The respondents set up two defenses: The first is usury in the transactions between Jewell and the complainants; and the second is that Jewell had the right to sell the lands, and they bought them in good faith.

With regard to the first defense, for several reasons the court is of the opinion that it is not maintainable. The mutual transactions covered a period of about 12 years; stated accounts were rendered Jewell monthly, and he acknowledged their correctness without objection. He is concluded as to these monthly accounts, and is barred by the statute of limitations from the plea of usury, and besides it is not at all clear that there was usury. It is true, interest was charged by Woodward, Baldwin & Co. on the balances which Jewell admitted to be correct; but these balances properly bore interest, and it is nowhere made to appear that more than 7 per cent. was charged. This cannot be held usurious, (*Pinckard* v. *Ponder*, 6 Ga. 253,) nor could their commissions be regarded as usurious.

This brings us to the consideration of the second ground of defense, namely, "that Jewell had the right to sell, and the respondents took an unincumbered title." It cannot be doubted that the two instruments executed by Jewell and Woodward, Baldwin & Co., on the seventeenth January, 1878, in legal contemplation, constitute one and the same contract. *Slaughter* v. *Culpepper*, 44 Ga. 325; 2 Bl. Comm. 327; Co. Litt. 236. Where two instruments are executed at the same time, between the same parties, relative to the same subject-matter,

they are to be taken in connection as forming together the several parts of one agreement. Whether these two instruments constitute a deed or mortgage is not material. If a mortgage, Jewell had a right to sell the land free from its lien; if a deed, he had the right to sell the title, having reserved that right in his contract with Woodward, Baldwin & Co. Nor does it matter that the instrument authorizing Jewell to sell had but one attesting witness. *Inter partes* it is binding; and besides, it is in the nature of a reservation grafted in the deed, which was properly attested. A court of equity will not permit Woodward, Baldwin & Co. to defeat purchasers under the instrument which they themselves have executed. It is a familiar doctrine "that he who empowers another to do a wrong must suffer rather than innocent persons who have been as a consequence wronged." Besides, this is simply an objection to the execution of the instrument; and the complainant produced it as a part of their exhibits to the bill, and gave it verity in that way. *Hunt* v. *Formby*, 43 Ga. 79.

It is urged for the complainants that Myrick and Mrs. Daniel hold under quitclaim deeds from Jewell, and for that reason cannot rely on the equities of *bona fide* purchasers without notice. This question has been adjudicated by the courts of the several states so as to leave a distressing conflict of authority; but the supreme court of the United States has settled the rule for our guidance here. They hold that a grantee in a quitclaim deed cannot defend as a *bona fide* purchaser without notice. *Villa* v. *Rodriguez*, 12 Wall. 323; *Dickerson* v. *Colgrove*, 100 U. S. 578. It may well be doubted, however, whether these are quitclaim deeds. They convey the title absolutely, without the usual phraseology, "remise," "release," "relinquish," "quitclaim," etc. Besides, no form in Georgia is necessary to a conveyance, provided the intent to convey is clear. *Ball* v. *Wallace*, 32 Ga. 172.

Conceding, however, that the deeds are of the character claimed by the complainants, the notice with which the purchaser was charged is *defect* of *title*. But there was no such defect here, as Jewell had the right to sell and to make titles. This right was exercised. But it is insisted that the quitclaim deeds should have the effect to put on the purchasers the duty to see that the purchase money found its way into the hands of those to whom it belonged. 2 Perry, Trusts, 796, and 2 Story, 1127–1132, inclusive, are cited.

The English rule on this intricate topic is as follows: "Where the trust is to pay from the proceeds of sale a particular debt, the purchaser must see that the money finds its way into the hands of those to whom it belongs." Perry, Trusts, 796. But this rule is not favored in American courts, and the same author, paragraph 798, concedes this; and Mr. Justice STORY declares, after a full statement of the nice distinctions involved:

"They lead strongly to the conclusion to which, not only eminent jurists, but eminent judges, have arrived, that it would have been far better to have held in all cases that the party having the right to sell had also the right to

receive the purchase money, without any further responsibility on the part of the purchasers as to its application." Story, Eq. Jur. 1135. See, also, *Elliott* v. *Merryman,* Lead. Cas. Eq. (Amer. Notes,) p. 73.

From these authorities the conclusion is obvious that, in the absence of allegation or evidence of collusion or fraud between the respondent Jewell and his co-respondents, the purchasers of the lands, the latter were under no legal obligation to look to the proper application of the purchase money.

The prayers of the bill are, for the reasons given, denied, with costs.