JOHN F. WHITE, EXECUTOR, &c., Appellant, *v.* LORD W. SALISBURY *et al.*, Respondents.

*Sale—Stock.*—A contract to sell and deliver shares of stock in an incorporated company is satisfied by transferring to the party the title to the stock upon the books of the company.

*Contract—Damages.*—When there has been a rescission of a contract for the sale of chattels, the purchaser may sue and recover from the seller the value of what he paid on the contract; but when the contract is still subsisting, the measure of damages is the market value of the chattel at the time and place of delivery.

*Appeal from Montgomery Circuit Court.*

The appellant sued the respondents upon the following instrument of writing :

" We, the undersigned, agree to pay and deliver to William White, or order, seven hundred and seventy-seven dollars and sixteen and three-fourths cents in railroad stock of the North Missouri Railroad Company, the same to be delivered to him on or before the fifteenth day of July next, which amount is understood to be seven shares and .77¾ of a share. The above shares are given in discharge of a note given by L. W. Salisbury to William White for $616.72, and dated February 21, 1853. L. W. Salisbury, H. D. Brown. Test: W. G. Shackelford. Dated 22d June, 1857."

Plaintiff averred in his petition that the defendants had failed to comply with their contract, in not delivering the railroad stock on or before the fifteenth day of July, 1857, the time agreed upon for its delivery, and claimed damages to the amount of the consideration advanced by White to Salisbury & Brown, being the note he (White) held on Salisbury for the sum of $616.72.

The answer of the defendants denied that plaintiff was entitled to damages, as claimed, or in any sum; that defendants did, in compliance with the terms of their contract, on the fifteenth day of July, 1857, have the requisite number of shares entered in the name of William White upon the books of the North Missouri Railroad Company.

This cause was submitted to the court without a jury, and the following declarations of law were prayed by plaintiff:

1. That, under the terms of the contract read in evidence between the plaintiff's testator and defendants, the defendants were bound to deliver, on or before the fifteenth day of July, 1857, a certificate of the stock contracted to be delivered, and that a transfer upon the books of the company, on the fifteenth day of July, 1857, or at any previous time, without any notice to White, is not in law a sufficient delivery under said contract.

2. That the agreement was made upon the consideration of a discharge of a note held by White against Salisbury, and, upon failure to deliver according to the terms of the contract, the measure of damages is the full value of said

note, with interest. The court refused the instructions, and gave a judgment for the defendants.

*Jones & Hayden*, for appellant.

I. That under the contract a transfer or entry upon the books of the company of the amount of stock contracted to be delivered was no delivery, either *actual* or *symbolical*.

In this case the parties have in the contract fixed and liquidated the damages; the agreement is to pay and deliver so many dollars in railroad stock, being so many shares, being precisely the amount of the note of Salisbury, with the interest added in up to the date of the contract, June 2, 1857. If a party agrees to pay and deliver a thousand dollars to another in hogs, the damages to the party, when he has paid the thousand dollars, is that amount, with interest, and not a less sum, because the terms of the contract and the payment of the money show what the party's liability is by the agreement itself. (See Clamorgan v. Lisa's Exec'rs, 1 Mo. 99; Bush v. Canfield, 2 Conn. 485; Sedgwick on Meas. of Dam. 269 et seq.; 19 Conn. 212.)

*Sharp & Broadhead*, for respondents.

I. The act of respondent Salisbury, in procuring a transfer of the amount of the stock called for by the contract on the books of the North Missouri Railroad Company, is a substantial compliance with the contract. It may be safely stated, that upon an agreement for the sale of personal chattels, where the property is in its nature intangible and incapable of manual or actual delivery, that if the vendor, by his act, passes the title to the vendee and puts it out of his power to recall it, that it amounts to a delivery. (Acts of 1853, pp. 325 & 326, sec. 8.) This was done by act of the company, and the mere fact that the new certificates of stock were handed to defendant did not vest him with any authority or control over them; they were issued to White, and White alone could control the stock or re-assign it. (5 W. & Serg., p. 106.)

The fair construction of this contract is that White discharged the note, in consideration that Salisbury would pay him so much stock. If Salisbury failed to comply, the measure of damages is the value of the stock.

DRYDEN, Judge, delivered the opinion of the court.

The defendants, by the contract sued on, agreed to deliver to the plaintiff's testator, on or before the fifteenth of July, 1857, seven 77-100 shares of stock in the North Missouri Railroad Company. The main ground of controversy in the court below was as to what was required to be done by the defendants to comply with their engagement, the plaintiff maintaining that the delivery of certificates of stock to his testator was essential; while it was insisted by the defendants that a transfer of the stock to him on the books of the company was what was necessary, and all that was requisite. We think the defendants' theory the correct one. The end the parties intended to accomplish was to confer upon the plaintiff's testator the title and ownership of the stock contracted for. The delivery of the certificates from one party to the other would leave the title to the stock just where it was before. The only effectual mode of transferring the title was by a transfer on the books of the company, and by that means only.

The eighth section of the amended charter of the North Missouri Railroad Company, (Sess. Acts of 1853, p. 325–6,) provides that, " when payment for the stock of any subscriber or stockholder shall be fully made, the president and directors shall deliver one or more certificates of such stock, signed by the president, and countersigned by the treasurer, under the seal of the company, to such subscriber or stockholder, for the number of shares belonging to him or her, which certificates shall be transferable in a book to be kept for that purpose by the company, and, when transferred, shall be delivered up to the president and directors and be cancelled, and new certificates be issued to the assignee." In the Agricultural Bank v. Burr, 11 Shepley (Me.) R. 263, shares

of bank stock had been transferred to the defendant on the books of the bank, but no certificate of stock had been issued to him. The question arose whether he was a stockholder. Mr. Justice Shepley, in delivering the opinion of the court, says, " a person becomes legally entitled to shares so transferred to him upon the books of the bank. The certificate is but additional evidence of his titles." Same Bank v. Wilson et al. 273, is to the same effect. (Ellis v. Essex Merrimack Bridge Co. 2 Pick. 243 ; Chester Glass Co. v. Dewey, 16 Mass. 94.)

II. The second instruction asked by the plaintiff assumes that the measure of the damages for the breach of the contract sued on is the value of the note, which was the consideration of the defendants' promise.

Where there has been a rescission of a contract for the sale and delivery of chattels, the vendee may sue and recover from the vendor the value of whatever he paid on the contract; but where the contract is still existing, and suit is brought upon it, as in this case, the measure of damage is not the price or value of the thing paid by the plaintiff, but the market value of the chattel, to be delivered at the place of delivery and time of the breach. (Sedgwick on Dam. 282 et seq.) There is no error in the court below, and its judgment is therefore affirmed. The other judges concur.