JOSHUA FINE, Appellant, v. D. C. HORNSBY, Respondent.

### April 10, 1876.

1. Shares of stock in a corporation are goods, wares, and merchandise, within the meaning of the statute of frauds, so as to require a note or memorandum in writing to validate a sale.
2. A having purchased shares of B, an agreement that the transaction shall be considered as canceled cannot be made the foundation of an action by A against B, as for a resale of the shares to B.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Marshall & Barclay,* for appellant, cited: Chitty on Con. (10th Am. ed.) 409, 419, 422; Bradley v. Holdsworth, 3 M. & W. 422; Kemble v. Mitchell, 11 A. & E. 205; Watson v. Sprathy, 10 Exch. 222; Fine v. Rogers, 15 Mo. 315; Kerr v. Bell, 44 Mo. 120; Story on Sales (3d ed.), sec. 277; Bass v. Walsh, 39 Mo. 199; Leonard v. Davis, 1 Black, 476; Glasgow v. Nicholson, 25 Mo. 30; Edan v. Dudfield, 1 Q. B. 302; Means v. Williamson, 37 Me. 536; Handlette v. Tallman, 14 Me. 400; Barrett v. Goddart,

3 Mason, 107; Williams v. Evans, Admr., 39 Mo. 201; Houghtaling v. Ball, 19 Mo. 84; Phillips v. Brestollé, 2 B. & C. 511; 9 Eng. Cr. Law Rep. 162; Bass v. Walsh, 39 Mo. 192, 198; Dyer v. Libby, 61 Me. 45.

*Dryden & Dryden*, for respondent, cited: Tisdale v. Harris, 20 Pick. 9; North v. Forrest, 15 Con. 400, 404; Gadsder v. Lance, 1 McMull. Eq. 91; Life Ins. Co. v. Cole, 4 Fla. 359; Baldwin v. Williams, 3 Metc. 367, 368; 3 Pars. on Con. (5th ed.) 49, 50, and note; Colvin v. Williams, 3 Har. & J. 38; Schouler on Pers. Prop. (1st ed.) 39, 40; Bouv. L. Dic., title Goods; United States v. Moulton, 5 Mason, 537; Gooch v. Holmes, 41 Me. 523; Eastern R. R. Co. v. Benedict, 10 Gray, 212; Riggs v. Magruder, 2 Cranch C. Ct. 143; White, Exr., v. Salisbury, 33 Mo. 153; Lillywhite v. Devereux, 15 M. & W. 285, 290; Glasgow v. Nicholson, 25 Mo. 30; Bass v. Walsh, 39 Mo. 197; Stindler v. Houston, 1 Comst. 261; Archer v. Zele, 5 Hill, 205; Ely v. Ormsby, 12 Barb. 570.

Lewis, J., delivered the opinion of the court.

The petition alleged, in substance, that in the year 1869 plaintiff purchased from defendant an interest of one-fourth in the Missouri Lime Company, and paid therefor the sum of $2,000. That afterwards, in October or November, 1869, by a verbal agreement, defendant agreed to purchase said interest from plaintiff, and to pay him therefor the sum of $2,000, with interest at 10 per cent. That plaintiff then and there gave up and transferred said interest to defendant, but defendant had hitherto failed and refused to pay said purchase price, or any part thereof; whereof plaintiff asks judgment, etc.

The answer denied, generally, the allegations in the petition, and averred that in August, 1869, defendant, acting as agent for one Petitjohn, and not on his own account, sold to plaintiff the one-half of fifteen shares of stock owned by said Petitjohn in the Missouri Lime Company, a body cor-

porate under the laws of Missouri, for which plaintiff paid to defendant, as such agent, and not otherwise, the sum of $2,000, in part of the purchase money. In further denial of the alleged subsequent sale by plaintiff to defendant, it was claimed that such supposed sale was a contract for the sale of goods, wares, and merchandise; that no part of the same was accepted or received by the supposed buyer, nor was any earnest money paid, nor any note or memorandum in writing made to bind the parties.

A reply ignored the alleged agency of defendant; averred that defendant had received and accepted the " said shares so sold, and promised to pay plaintiff for the same;" assumed that " the shares so sold do not constitute such a sale of goods, wares, and merchandise as was contemplated by the statute of frauds and perjuries," and contained no denial of the corporate character of the Missouri Lime Company.

In a voluminous mass of oral testimony presented by the bill of exceptions, the following items appear to constitute all that is material to the controversy. The plaintiff testified that in August, 1869, he purchased from defendant an interest of one-fourth in the Missouri Lime Company, at the price of $6,000 or $8,000, of which he paid, at the time, $2,000. That defendant gave him a written receipt, stating on what account the money was paid, and that the proper papers were to be thereafter made out. That plaintiff thereupon undertook to superintend the work of the company; but finding, in two or three months, that it did not pay, he expressed his dissatisfaction to defendant, who told him that, if he was dissatisfied with his purchase, all he had to do was " to just be quiet, say nothing about it, and go on with the work, and that he would pay me back my money, with 10 per cent. interest. I might consider it just as a loan." Plaintiff accordingly kept quiet, and went on with the work. No writing was drawn, nor money paid, nor was there any indication of the agreement or resale

other than the conversation referred to. Defendant afterwards repeatedly promised plaintiff to pay him the $2,000 and interest as soon as he could get it. In the cross-examination, plaintiff said that he continued to consider himself a member of the company until he got his money. Plaintiff's son, testifying in his behalf, said that, in the spring of 1870—which was some months after the alleged resale to defendant by the plaintiff—defendant told the witness that "he was willing, as soon as they could raise the money," to buy the plaintiff's interest.

At the close of the plaintiff's testimony, the court, upon defendant's application, instructed the jury that, upon the evidence adduced, the plaintiff was not entitled to recover; "the contract proved being void under the statute of frauds."

In the very skillfully prepared argument of plaintiff's counsel we cannot find a single reason why this instruction should not have been given. Under the pleadings the plaintiff had no case unless he proved an actual, complete, and binding sale to the defendant. The reply virtually admits that the commodity sold, if anything, consisted of shares of stock in an incorporated company. That such shares are goods, wares, and merchandise, within the purview of the statute of frauds, has been held too long, without an authoritative adverse ruling, to admit of question now. Since that statute first became the law, no sale of anything which it reaches has ever been affected by mere words, with nothing more. There was, in this case, literally nothing else. The plaintiff delivered nothing to the defendant. He argues that it was impossible for him to deliver the interest or shares sold, because the defendant had them already in his possession. If this be true, it is because there was no delivery in the first sale from defendant to plaintiff. There was, then, no complete sale in that transaction, and the plaintiff had nothing to either sell or deliver in the second one. But this difficulty is escaped,

while his argument is destroyed by the allegation, in the petition, that he had actual possession of the interest at and before his sale thereof to the defendant. He likens his non-delivery, moreover, to the case of a ship at sea, which may be effectually sold when delivery is impracticable. But he fails to observe that no such sale of a ship was ever recognized as valid without some note or memorandum in writing, or payment of earnest money—both of which elements were wanting in the present case.

There was no transfer of the shares upon the books of the company. *White, Exr.*, v. *Salisbury*, 33 Mo. 150. There was no change of dominion over the property, but, on the contrary, the plaintiff still considered himself a member of the corporation "until he got his money." There was no act of acceptance or of ownership by the defendant; nor was there, in short, anything whatever done or attempted, either to satisfy the statute of frauds, or to screen the alleged contract from its invalidating power.

But was there, in fact, any sale even attempted in the conversation between the parties? Their concurrence of views would appear to have been rather upon a rescission of the former agreement than upon the making of a new one. Not a word was said about a present sale. The only proposition considered was that the past transaction should be treated no longer as involving any transfer of property to the plaintiff, but that the money advanced by him should be regarded as a loan, to be repaid with interest. If the plaintiff, instead of suing for the purchase money upon an assumed sale, had framed his petition more nearly in accordance with his proofs, he would at least have escaped the difficulties which obstruct him in this proceeding.

No other matters of exception inviting our review, the judgment is affirmed, with the concurrence of all the judges.