STEMBRIDGE v. MORGAN, and vice versa.

The contract between the parties as manifested by the evidence embraced the building of a house by the defendant, as well as the advancement of the purchase money for the lot; and the house having been built with the plaintiff's knowledge and apparent acquiescence, after the dispute arose between the parties, he is not entitled to a conveyance of the premises without first paying or tendering the cost or value of the house, as well as the original cost of the lot. The judgment of nonsuit was correct.

Judgment affirmed. Cross-bill of exceptions dismissed.

February 15, 1892. By two Justices.

Contracts. Tender. Nonsuit. Before Judge MILLER. Bibb superior court. April term, 1891.

Action by Stembridge to compel Morgan to make him a conveyance of a certain lot of land upon the payment to Morgan of $400 with interest and such legal expenses as he had incurred in procuring the title. A nonsuit was granted on the ground that the plaintiff did not tender the value nor offer to pay for any improvements shown to have been built by the defendant on the property, and the plaintiff excepted. To certain other rulings the defendant excepted by cross-bill not material here.

The petition alleged that in 1890 the plaintiff negotiated with Vannucki, the owner, for a certain described lot numbered 18, and Vannucki agreed to take $400 for it. Plaintiff purchased it and prepared to pay the agreed price. He had made every arrangement neces-

sary to build thereon a home for his family and himself, when Morgan approached him and proposed that, as there was another vacant lot owned by Vannucki and adjoining the one so bargained for and purchased, plaintiff should purchase this other vacant lot numbered 19, for the same price, and that Morgan would furnish the purchase money for both lots, advancing that for the lot already purchased, and become plaintiff's creditor for the $400. At the instance of Morgan plaintiff in good faith did purchase the two lots for $800, thus saving Morgan the vacant lot he desired; this second transaction with Vannucki occurring several days after the first, plaintiff fully relying on the agreement with Morgan for lot 18, and it being fully understood that the contract was that plaintiff should make the trade with Vannucki and give Morgan the benefit of the transaction so far as said vacant lot was concerned, and that plaintiff would still be the owner of the lot he had previously purchased. After the purchase was made, Morgan commenced to use absolute ownership over both lots, ignoring the contract absolutely thus made, when plaintiff approached him on the subject and was informed by him that he had purchased the two lots as an investment. Plaintiff at once tendered to him the full purchase money price for lot 18, to wit $400, which tender Morgan refused, although such was the contract at the outset and continued during the entire transaction until plaintiff demanded his rights and equities in the matter. Morgan repudiated the contract at the time of the tender and does now, to the great injury and damage of plaintiff, who now and at all times tenders to him the $400 in full and specific and complete compliance with his part of the contract.—By amendment the plaintiff alleged that after he had bargained for lot 18 and had applied to a loan company for the money necessary to secure the legal title thereto and to

build a house and otherwise improve the same, which loan was acceptable to the company, Morgan proposed to him that if he would buy the adjoining lot, Morgan would furnish all the money he needed for the purposes aforesaid upon the same terms as the loan company, and would "serve him as the loan." Having known Morgan for a long time and having implicit confidence in him, plaintiff preferred to get the money from him, accepted the proposition, proceeded at once to negotiate with Vannucki, and succeeded in getting the adjoining lot for the same price; and as a part of and in pursuance of his agreement with Morgan, relying on Morgan's promise and agreement, he directed and consented for Vannucki to convey both lots to Morgan, and in good faith expected to perform his remaining part of the contract, as he had done in buying said lot for Morgan; but except for Morgan's promise he would not have permitted the title to be made to Morgan and thus allowed Morgan to obtain an undue advantage of him. Soon afterwards, without any notice that he intended to act other than in accordance with the terms of the contract, Morgan commenced to make improvements upon lot 18, when plaintiff called on him to know what he meant by such conduct, and for the first time was notified by Morgan that he did not recognize any rights of plaintiff in the premises; whereupon plaintiff tendered him the purchase money with interest and any just charges he had for expenses in and about procuring the title, which he wholly refused. As plaintiff cannot otherwise be restored to his original position, Morgan should be required to execute to him a deed to lot 18 upon receiving the purchase money and interest thereon, which plaintiff prays may be decreed.

At the trial the plaintiff testified: About the middle of February, 1890, I bought the first lot from Vannucki. A week or so after, Tool and Morgan came to where I

v 88-29

was grading the lot, and in Morgan's presence Tool asked who the lots belonged to. I told him one was mine and the other belonged to Vannucki, and that I was to pay $400 for mine. He offered me $50 for my bargain; I told him I did not buy to sell but for a home. In a day or so Morgan told me, if I would go to Vannucki and buy the lot adjoining mine for the same money, he would furnish me money to pay for my lot, and build a house and serve me as a loan. I told him I would try, went to Vannucki and made the trade; he turned over the deeds to me, and I went and told Morgan I had made the trade and had the deeds for the purpose of investigating titles. At Morgan's instance we went to Stone's office and he explained it to Stone, who said he would charge $10. It rocked on for several days, and Vannucki asked me to whom he was to make the deeds, and I told him to make the deeds to Morgan and Morgan would make my deed when the time came. I was to have a four-room house, and told Morgan a three-room house was not large enough for my family; he did not want to build a four-room house after I had made the trade, he only wanted to build a three-room house. I told him that would not suit me, that it cost very little more to build a four-room house; and that is what split the trade. I said to him, "I see we cannot agree; and you give me $50 for my bargain in my lot, and I will let you have it and I will have nothing more to do with it." He refused to do so. I said "You heard a man offer me that." He said, "Yes, let Tool have it." I told him I did not know that Tool still wanted it. I saw Tool, and he had bought another lot. I went back and told Morgan Tool did not want it, and I said to him Tool was not the only man in Macon that had any money, "you make me a deed and your money is ready." He turned off and said he would not do it. I then said to him, "If you think you can prosper by

treating me that way, go on and put a house on that lot." I was prepared to pay him the money at the time, and he refused to take it. I did not pull the money out and hand it to him. I offered to pay him $400 and interest, and half of the attorney's fee for investigating the title. All this occurred in the same conversation, and he had then not built any house on the lot. I suppose it was a week or so after we carried the deeds to Stone. I do not think he had put any timber on the ground; he might have started to haul it, do not know but think he started to haul the timber about March 10th. I had no more negotiations with him afterwards. I never offered him my lot at all; it never was his. I had not paid for it and had no deed to it. I was to pay $400. There was no specified time when I was to pay. I had made application for the loan, but after Morgan told me what he would do I withdrew the application. I paid no money to the loan association, and did not know how long it would be before I could get the money. I was not obliged to get the money from the loan association. Morgan told me to say to Vannucki to make deeds to both lots to him, and that he would pay the money. I was to have such a house as I wanted. He was to furnish whatever money the house cost. The reason I told Morgan to give me $50, I saw he was not willing to give me what I wanted and that I had got my foot into it; if I had had writing I would have been all right. If Tool took the lot, Morgan was to have his $400 with interest for the time and half attorneys' fees. I was to get the money from Minor. The money at the time was in bank, I think in Mrs. Minor's name. I had not seen her; there was nothing said about seeing her for the money, but I would have satisfied her. I may have told Minor I would give him the deeds. No mortgage had been drawn at the time. He was to let me have some $400. It may have been over two days before I

offered the money to Morgan, that I saw Minor.   I was
telling him about how Morgan was treating me, and he
proposed to let me have the money; this was probably
two weeks after we were in Stone's office.   Minor was
simply to loan me the money to pay Morgan what he
paid out; do not remember that anything was said
about the time it was to be paid or rate of interest.   Tharp
& Wilder built the houses for Morgan.   Morgan asked me
to send him a good man, and I told  Tharp to see him,
this was before Morgan  and I split and before I got the
money from Minor ; but I do not recollect that the con-
tract with Minor for the money was before I brought
the suit, or not.   The houses were built near my store;
I saw them being built ; I never said anything more to
Morgan after I told him if he thought he could prosper
by treating me that way, to go and build a house on the
lot.   He was to hold the house and lot until I paid him
and was to give me bond for title ; if I failed to pay him
the house was to be his.   I have known him twenty-five
years; we have always been friends; I had all confidence
in him, and told Vannucki to make him the deed because
I trusted him and we had so agreed.

Other  testimony  was to this effect:  About the 1st of
March, 1890, Tool in the presence of Morgan offered
plaintiff $50 on his bargain for the lot, which plaintiff
declined; something was said about another lot there,
which Tool did not remember ; afterwards the lot was
offered to Tool by plaintiff and Morgan both; when
plaintiff offered it to Tool he said Morgan had paid out
some money on it for grading, etc., and Tool asked him
to submit in writing, so he went and brought back a
paper stating lot so much, cost grading so much, signed
by Morgan ; Tool did not remember ever giving plain-
tiff a definite answer, but did to Morgan, refusing to
take it, which was, Tool supposed, ten days after the
time plaintiff first offered it to him.   Plaintiff made

application for twenty shares of stock in a loan association and wanted $1,000, but afterwards declined to take it in consequence of having made other arrangements; he paid no money on the stock; money had been obtained in less than thirty days after the application; this association loans about seventy-five per cent. of the value of the property. In February, 1890, Vannucki sold plaintiff the first lot for $400; afterwards plaintiff came back and bought the other lot for the same price, and Vannucki turned over the chain of title to him; he told Vannucki to make a deed to Morgan to both lots and Morgan would pay him the money, which he did; the lots are worth now $600 or $700 each; they have on them what seem to be nice little houses; plaintiff never paid Vannucki any money, and they never entered into any writing about it; it may have been four, five or six weeks after plaintiff bought the lot before Vannucki made the deed to Morgan; plaintiff was to pay Vannucki inside of thirty days, said he was going to get the money from the loan association, and then said he could get it from his friend Morgan. During March or February, 1890, plaintiff told Minor he wanted to borrow some money to buy a lot near his store, and Minor agreed to let him have $400 or $500 which he had at the time; Minor told him to go and have the papers fixed up and he would let him have the money, and in a day or so plaintiff said there was some trouble about getting the title out of another party; Minor thought he gave plaintiff a check which he returned, saying he had no use for it, that he could not get the title; Minor was to have a mortgage on the lot, which was never drawn; the money was Mrs. Minor's and deposited in her name; when Minor gave him the check he was to return it for the papers to be fixed, as Minor wanted them and the titles to be clear; plaintiff wanted to get the money to pay for the lot to whoever

it belonged, and stated when he came back to Minor that Morgan had backed out.

L. D. MOORE, by brief, for plaintiff.

RYALS & STONE and HILL, HARRIS & BIRCH, for defendant.