ANSLEY *v.* HIGHTOWER.

SIMMONS, C. J.　1. The allegations in the petition set forth a contract based upon a sufficient consideration, and a breach thereof by the defendant.

2. The petition also showed that the contract was with the defendant individually, and not with a partnership of which the defendant was a member.

3. Where a petition declares upon a contract, it is not necessary, even though such contract is within the statute of frauds, to allege that it was in writing. Upon demurrer it will be presumed that the contract was in writing, unless the pleadings show the contrary.　*Walker* v. *Edmundson,* 111 *Ga.* 455; *Taliaferro* v. *Smiley,* 112 *Ga.* 62.

4. A tender of money is excused where, before the expiration of the time therefor, the party to whom it is to be made makes declarations equivalent to a refusal to accept the tender if made.　*Biggers* v. *Pace,* 5 *Ga.* 171; *Baynes* v. *Bernhard,* 12 *Ga.* 150; *Hunt* v. *Formby,* 43 *Ga.* 79; 25 A. & E. Enc. L. 904.　　　　　　　　*Judgment reversed.　All the Justices concur.*

Argued June 23, — Decided July 14, 1904.

Complaint.　Before Judge Mitchell.　Thomas superior court. October 20, 1903.

The petition of Ansley against Hightower alleged: Defendant is indebted to plaintiff $1,944, with interest thereon from June 28, 1902, at seven per cent. During all the year 1898, and until plaintiff entered the service of Heath & Hightower (who were doing a sawmill business at that time under the firm name of the Union Lumber Company, which firm was composed of W. A. Heath and the defendant), plaintiff was in the employ of the Brown Supply Company and of the receiver of the Brown & King Supply Company, of Atlanta, Georgia, at a salary of $150 per month, and could have kept said position and salary for an indefinite length of time. In January or February, 1898, plaintiff, while so employed, was visited at his place of business in Atlanta, by Heath, who said to him that said sawmill firm had practically sawed up all the sawmill timber at their location, Empire, Georgia, and requested plaintiff to see if he could find said firm a new location, stating that if he could do so they would pay him for his trouble or give him an interest with said business in the new location. A few years prior to this time, plaintiff had been engaged in a sawmill business a few miles distant from said firm, in which business he had made a success and made a considerable amount of money; which facts being well known to both Heath and Hightower, they were anxious to secure his services in this

behalf. A few days after said conference with Heath, plaintiff negotiated with W. W. Ashburn, who then owned a large body of sawmill timber in Colquitt county, Georgia, with a view of securing this timber for the said parties. These negotiations extended to January 23, 1899, when the trade was consummated and a lease to the sawmill timber executed by said Ashburn to Heath and Hightower, leasing them about 30,000 acres of saw timber. In said negotiations plaintiff acted for Heath and Hightower, and was the means of bringing Ashburn and Heath and Hightower together, and of consummating said trade. Prior thereto, and frequently while it was pending, plaintiff conferred with Heath and Hightower, all the time both of them agreeing to compensate plaintiff by letting him in with them on an equitable basis, in case said timber should be secured. After the timber was leased, and during the spring of 1899, the Union Lumber Company, a corporation of Fulton county, Georgia, was organized with a capital stock of $250,000, said sawmill firm by the same name being merged into it. In organizing said corporation, H. M. Atkinson and his associates contributed $60,000 in cash, and Heath and Hightower put into said corporation their sawmill outfit at a valuation of $45,000, and in addition $15,000 in cash, thus giving said Heath and Hightower each a one-fourth interest in the corporation; which netted them each stock in the corporation of the par value of $62,500, which really cost them only $30,000. This is all that was paid into the corporation. The money so paid was used principally for paying for the Ashburn timber and other sawmill timber in Colquitt county. Plaintiff and defendant and Heath thought and agreed that this was a good arrangement, and that this timber had been purchased at a remarkably low price; and for this reason agreed that it was advisable for them to enter into said corporation, and to this end, on May 20, 1899, Heath and Hightower transferred said timber lease to the Union Lumber Company. Prior to the organization of said corporation, it was agreed by plaintiff, defendant, and Heath, in consideration of his services in the matter, and in further consideration that plaintiff would still further assist them in the business for the same salary, $150 per month, that they would each allow plaintiff 50 of their shares of the capital stock of the Union Lumber Company; plaintiff to pay them each for the same on the basis of what said shares

had cost Heath and Hightower, to wit $48 per share; it being agreed by defendant and Heath that plaintiff should have a sufficiency of time in which to pay them for said shares.  At this time plaintiff surrendered his position with his former employers, where he was getting $150 per month, which position he could have kept indefinitely, and in which he was comfortably situated, and took up the much more onerous and disagreeable position in the employment of the Union Lumber Company, at the same salary; the reason for doing so being that, as he was now the owner of $10,000 worth of the capital stock of said corporation ($5,000 worth of which being held by Heath and $5,000 worth by Hightower), he was exceedingly anxious to make said corporation prosper, in order that his stock might be the more valuable.    Plaintiff was with said corporation during all of its formative period, and, together with the others interested in it, worked diligently to make it a success.  About September 23, 1901, Heath having severed his connection with said corporation and having gotten an offer for his stock in it, by permission of plaintiff sold the $5,000 worth (par value) of plaintiff's stock held by him.   In the settlement between plaintiff and Heath, the defendant was present, and assisted in the same.   At that time Heath and defendant decided each to charge plaintiff interest on the original cost of the stock at the rate at 8 per cent. per annum, and when plaintiff objected that this rate of interest was too high, Hightower told plaintiff that he and Heath would insist on charging him 8 per cent. interest to that time, as they had been forced to borrow some money at 8 per cent. interest, but that he, Hightower, would let the debt owing him by plaintiff run for the next twelve months at six per cent.    This obligation was then entered into and accepted.    On June 28, 1902, plaintiff having negotiated a sale for his stock at par value, to wit, $5,000, demanded said stock of defendant, and offered to pay his indebtedness to defendant.    Defendant refused to deliver and transfer said stock to plaintiff.   Said stock was worth at that time in the open market $5,000, and plaintiff could have actually obtained that for the stock, and he had an offer for it at $5,000.    Plaintiff would have sold it for that amount had not defendant failed and refused to transfer and deliver said stock. The original price at which said fifty shares of stock was sold plaintiff by defendant was $48 per share, or $2,400 for the 50

shares.    The interest thereon from January 23, 1899, to September 23, 1901 (the time of said sale by Heath and of defendant's agreement to carry plaintiff's indebtedness at the rate of six per cent.), at eight per cent. per annum, amounted to $512; and the interest from September, 1901, for one year at six per cent. per annum, amounts to $144; aggregating a total of $656 as interest; which together with the principal indebtedness of plaintiff to Hightower of $2,400 makes $3,056; which amount, taken from the value of and price plaintiff was offered for said stock, to wit, $5,000 as above shown, leaves a difference of $1,944; which amount defendant has been indebted to plaintiff since June 28, 1902.    Wherefore plaintiff prays judgment, etc.    By amendment it was alleged:  During July or August, 1902, when plaintiff pressed defendant for a reason as to why he was refusing to deliver to plaintiff the said stock, defendant told plaintiff that the reason he did not deliver it was that it meant $2,000 to him not to do so; thereby meaning that said stock was then worth $2,000 more than the amount plaintiff owed defendant therefor.    The only reason that defendant refused to deliver him the stock was because it had appreciated in value.

The defendant demurred to the petition generally, and as follows:  It does not appear that the plaintiff ever tendered to the defendant the money contracted to be paid for the stock, nor is there any tender in the petition, nor is there anything stated that waived compliance with the contract in this matter.    The contract for the purchase for the stock was without consideration, was a nudum pactum, and can not be enforced.    The alleged contract was never consummated; it was for the sale of goods in excess of $50, and therefore should have been in writing.    It does not appear that the plaintiff has ever complied with the alleged contract.    The petition shows no right of action against Hightower; but if any right of action is shown, it is against the partnership of Hightower & Heath.    It appears that Hightower has been released by the action of the plaintiff, by a settlement with one of the partners.    The court sustained the demurrer, and the plaintiff excepted.

*Shipp & Kline* and *S. A. Roddenbery*, for plaintiff, cited, as to tender: *Ga. R.* 5/172 (3, 4) ; 29/294 (4); 46/278 (2); 97/443, 445; 12 Am. D. 296; 6 Wis. 127, s. c. 70 Am. D. 453 (1).  Con-

sideration: Civil Code, § 3657; *Ga. R.* 12/52·; 104/157 (1); 9 Cyc. 308, note 66. Contract to purchase shares in corporation need not be in writing: 105 *Ga.* 432 (2). Part performance took the contract out of the statute of frauds: *Ga. R.* 37/26; 38/232, 234; 42/207; 53/98 (2), 109; 90/416 (1), 425. Demurrer not proper way to raise question as to statute of frauds: *Ga. R.* 111/455, 457; 112/62 (3), 65.

*Dessau, Harris & Harris* and *Pope S. Hill,* for defendant. The contract was with a partnership, and the partners should have been sued jointly: Civil Code, §§ 2635, 2638, 5009; 1 Lind. Part. *482; 2 Bates, Part. §§ 1049–50; 17 Md. 387; 60 Ill. 454. Contract too indefinite: Civil Code, § 2693 (4). The transactions covered too much time to ripen into such a contract: Civil Code, § 2693 (5). Contract was nudum pactum: 37 Ohio St. 339, s. c. 41 Am. R. 507. Statute of frauds applies to contract for shares in corporation: Fench's Prec. in Ch. 533; Sel. Cas. Ch. (2d ed.) 113; 53 N. Y. 467; 15 Conn. 400; 60 Me. 430; 2 Mo. App. 61; 3 Har. & J. (Md.) 38; 16 N. Y. W. Dig. 522; 38 Barb. 200; 158 N. Y. 617; 104 Fed. 219; 4 Fla. 359, 378; 72 N. Y. 595; 4 Rob. (N. Y.) 401; Reed on Stat. Fr. § 234. Statute of frauds applies especially where neither stock nor corporation is in esse: 128 Mass. 388.