## MILLER *v.* WATSON.

1. Equity will decree specific performance of a written contract to convey land, which is clear and definite in its terms.
2. As a general rule, a vendee of land, before bringing his action for specific performance, should tender to the vendor the amount agreed to be paid by him before the execution of the conveyance; but tender by the vendee before suit is excused if the vendor by declaration or conduct proclaims that if a tender should be made its acceptance would be refused. In the latter instance it is sufficient to offer in the pleadings to pay the amount due, or which may be found to be due by the decree of court.
3. Where a court of equity takes jurisdiction for the purpose of decreeing specific performance, when necessary to give full and perfect relief it will, with proper parties before the court, cancel as a cloud over the title a voluntary deed made by the defendant, prior in date to the contract of which specific performance is sought, which deed is apparently properly executed and recorded, but is void because it has never been delivered.
4. The petition set out a cause of action as against a general demurrer.

NOVEMBER 18, 1912.

Equitable petition. Before Judge Walker. McDuffie superior court. September 7, 1912.

*John T. West* and *L. Z. Rosser*, for plaintiff.

*Hawes Cloud, J. B. Burnside,* and *D. L. Farmer*, for defendant.

EVANS, P. J. William K. Miller filed his petition alleging as follows: Thomas E. Watson owned a tract of land containing 196 acres. On January 27, 1908, he contracted to sell it to Miller for $4,312, of which sum Miller paid $500 in cash and gave three notes for $1,270.66 each, payable respectively at one, two, and

three years after date, with interest from date at 6 per cent. per annum. On that day Watson executed to Miller his bond for titles, obligating himself to convey the land to Miller by warranty deed upon the payment of Miller's notes. The bond for titles contained an agreement that Miller could sell and convey such portions of the land as to him or them should seem best, and that Watson would join in the deed so as to convey a full fee-simple· title to the purchaser; the purchase-money or so much thereof as might be agreed upon at the time to be credited on Miller's notes. The bond for titles was duly recorded on the day it was executed. Miller sold seventeen· and eight-tenths acres of the land to B. H. Willingham for the sum of $500, of which $25 was paid in cash, and the purchaser gave his three notes for $158.34 each, due January 1, 1909, 1910, and 1911. When notified of this sale Watson joined with Miller in executing a bond for title to Willingham, who took possession of the property sold to him. On January 11, 1909, Miller paid to Watson $300 on account of purchase-money. Thereafter Miller negotiated a sale of eighty-nine and two tenths acres to D. Farmer for $27.50 per acre; and when Farmer caused the title to be examined, there appeared of record in the clerk's office a deed of gift from Watson to his infant granddaughter (the parents of the granddaughter being constituted her trustees) to the land sold to Miller. From the record the deed purported to have been signed, sealed, and delivered on April 29, 1907. Miller called the attention of Watson to this discovery, and he informed Miller that the conveyance to his granddaughter had never been delivered and had been inadvertently recorded; and as it was a cloud upon the title of the property he proposed to sell Miller, he agreed with Miller to institute proceedings to the March term, 1910, of the superior court, to remove this cloud. This proceeding was duly instituted by Watson, who dismissed it just before or at the September term, 1910, of the court. Miller negotiated a sale of 60 acres of the land to Sarah V. Tutt and Claud E. Young for the sum of $2,120, provided titles were made by the September, 1910, term of the court; but owing to Watson's dismissal of his suit to remove the cloud on the title, Miller was unable to make a title, and the negotiating purchasers refused to pay any portion of the purchase-money. On or about February 1, 1911, Watson entered on the land so sold to Miller, forcibly took possession thereof, put

a lock on the door of one of the houses, and notified Willingham and Farmer to vacate the property sold to them or pay him rent therefor for the year 1911. This amounted to a breach of the bond and constituted a trespass; and, as the property was worth $35 to $40 per month at this time, Watson is liable to Miller in the sum of $7,000. By his dismissal of the suit to remove the cloud on the title, and by his trespass upon the property, Watson has further damaged him $5,000 or other large sum. Miller desires to have all the contracts carried out, and he tenders herewith the balance of the purchase-money. He prays, that Watson specifically perform his contract; that the deed from Watson to his grand-daughter be canceled as a cloud on the title; that the title to the property be decreed to be in petitioner, subject to the right of Watson to be paid the balance of the purchase-money due him, less deductions for damages; that Willingham and Farmer be required to pay for the property sold to them, upon receiving proper title thereto; and for general relief. The defendants against whom process was prayed were Watson, his granddaughter, her parents, and Willingham and Farmer. The court dismissed the petition on general demurrer.

No special demurrer was filed; and therefore it is not up for decision whether the petition is multifarious, or open to any objection which might be raised by special demurrer. The case was dismissed on general demurrer filed by Thomas E. Watson, raising the point that the facts alleged do not constitute a cause of action. The petition is projected on the theory that the plaintiff is entitled to specific performance of his bond for title from Thomas E. Watson, upon payment of the balance of the purchase-money, and, as ancillary to such relief, that the purported voluntary deed from Watson to his granddaughter should be canceled. The first step in the solution of the case is the determination of the plaintiff's right to have specific performance of his contract of purchase as expressed in his bond for titles, under the allegations of the petition. While it is a general rule that the right to specific performance is in the sound discretion of a court of equity, yet it is the rule in this State that such power is to be exercised by the jury under the evidence and the charge of the court. *Franklin* v. *Newsom*, 53 *Ga.* 580. The bond for titles contains a clear and definite contract to convey land on the payment of the stipulated purchase-

money. Its legality was not questioned on the argument. In contracts for the sale of lands, mere failure to pay the purchase-money at maturity, where time is not of the essence of the contract, does not work a forfeiture of prior payments or abrogate the contract. *Ellis* v. *Bryant*, 120 *Ga.* 890 (48 S. E. 352). Time was not of the essence of the contract in this case. All of the purchase-money has not been paid, nor was there actual tender made of the balance. Ordinarily the plaintiff, before bringing his action for specific performance, should tender to the defendant the price of the property or the amount agreed to be paid by him before the execution of the conveyance. *Stembridge* v. *Morgan*, 88 *Ga.* 447 (14 S. E. 585); *Kerr* v. *Hammond*, 97 *Ga.* 567 (25 S. E. 337). But where the vendor by his declaration or conduct proclaims that if a tender should be made its acceptance would be refused, tender by the vendee before suit is unnecessary. Equity will not require a useless formality. *Ansley* v. *Hightower*, 120 *Ga.* 719 (48 S. E. 197); 36 Cyc. 705. So the point is, whether the conduct of the vendor was equivalent to a declaration that he would not accept the tender if it had been made. According to the petition, the vendee, at the time of making the contract of purchase, was ignorant of the record of a prior deed purporting to have been made by the vendor to his granddaughter. The vendee had made a payment of $300 on the note which fell due on January 1, 1909, when he received the information of the record of the prior deed. He communicated with the vendor, who, under date of July 18th, 1909, wrote to him that the deed to his granddaughter, though signed by him, had never been delivered, and that it had been inadvertently recorded. The vendor agreed that he would institute proceedings to remove this cloud on the title, which he did. But just before or at the September, 1910, term of the court he dismissed the proceedings, and a few days before the 1st day of February next he went upon the land and forcibly took possession of it, put a lock on the door of one of the houses, and notified Willingham and Farmer, who were in possession under the vendee, to vacate the premises unless they paid him rent for the land. Not only was Willingham in possession of a part of the premises under a contract of purchase with the vendee, but the vendor had also signed Willingham's contract pursuant to his stipulation in the bond for titles given to the vendee. The conduct of the vendor evinced an intention to

treat the contract of sale as at an end. The vendee and his assigns were in possession of the land, and under the contract they were entitled to possession. The vendee was also entitled to a marketable title. The vendor recognized this by agreeing to remove the cloud from the title. His abandonment of the proceedings to remove the cloud, after having agreed to prosecute the same to a conclusion, and forcibly taking possession of the premises indicate that the vendor treated the contract as no longer binding on him. Declarations by conduct may be not less emphatic and definite than declarations by oral speech or written document. In effect, the vendor by his conduct as alleged in the petition (which is admitted on demurrer) declared that he considered the contract as terminated, and that he would no longer recognize the right in the vendee to demand compliance upon tender of the agreed price. Such a declaration by conduct excused the vendee from making an actual tender of the money before bringing suit, and it was sufficient for him to allege an offer to pay the amount due or which may be found to be due by the decree of the court, without actually producing the money and paying it into court. *Kerr* v. *Hammond,* supra; Brock *r.* Hidy, 13 Ohio St. 306; Paris *v.* Greenleaf, 117 Ky. 817 (79 S. W. 267); VanDyke *v.* Cole, 81 Vt. 379 (70 Atl. 593, 1103). The vendee was not in laches so as to debar him of the remedy of specific performance. His last note for the purchase-money fell due January 1st, 1911. The vendor's forcible entry upon the premises, and threat to expel the vendee's purchasers unless they attorned to him, occurred a few days thereafter, and this suit was instituted in February, 1911. He was diligent in the prosecution of his remedy.

The allegation is that the vendor's deed to his infant granddaughter is void because it was never delivered. Courts of equity have jurisdiction to cancel a deed which, though not enforced at the time, either casts a cloud over the plaintiff's title or otherwise subjects him to future liability, and the cancellation of which is necessary to his complete protection. Civil Code, § 5465. Equity, having taken jurisdiction for the purpose of decreeing specific performance, will decree full and perfect relief touching the subject-matter. *Fulgham* v. *Pate,* 77 *Ga.* 454. We therefore reach the conclusion that as against a general demurrer the plaintiff alleged a cause of action, and that it was error to dismiss the petition.

*Judgment reversed. All the Justices concur.*