JAMES W. SHANNON, Respondent, v. CHARLES ABELL et al., Appellants.

Kansas City Court of Appeals, March 3, 1913.

1. SALES: Warranty: Rescission. A fraudulent warranty that a stallion is sound and that he is a good breeder, is broken and will justify a rescission either if the horse is blind in one eye or is not a good breeder.

2. ———: ———: ———: Stallion: Good Breeder: Sound: Measure of Damages. If a buyer purchases a stallion, taking a warranty of soundness and that he is a good breeder, and pays for him with another stallion and a jack and his note for $300, which he afterwards pays, and he discovers the stallion is blind, or is not a good breeder, and offers to rescind by delivering the stallion back to the seller, the latter refusing to return what he received, the buyer may recover as his damages the money paid on the note and the market value of the animals he transferred to the seller.

Appeal from Livingston Circuit Court.—*Hon. Arch. B. Davis*, Judge.

AFFIRMED.

*Scott J. Miller* for appellants.

*Frank Sheetz, J. M. Davis & Son,* and *J. D. Allen* for respondent.

ELLISON, J.—Plaintiff's action is for damages arising from the purchase of a stallion from defendants. He recovered judgment in the trial court.

Since the verdict was for the plaintiff we will assume the evidence in his behalf, with all reasonable inferences to be drawn therefrom, to be true. It appears that plaintiff purchased of defendants for nine hundred and fifty dollars, a stallion for breeding purposes; and that the price was paid by conveying to defendants a stallion he then owned, valued at five hundred dollars, and a jack valued at one hundred and fifty dollars, an his note for three hundred dollars. That the note was sold and indorsed by defendants and paid to the indorsee by plaintiff. It further appears that defendants falsely and fraudulently represented and warranted the stallion to be sound except that he was foundered, but that he would be well of that ailment within thirty days, and that he would get with foal at least sixty per cent of mares served.

It was then shown in evidence that defendants knew their representations were untrue, in that they knew the horse had a "blue" or blind eye. It seems the blindness was not of the character to be noticed and that plaintiff did not observe it until he had taken the horse to his home. He immediately notified one of the defendants that the horse was blind and took the horse to him and the latter admitted that his "eyes are gone,"—that "they are gone for good." After parleying about making the matter right with plaintiff, the latter presently endeavored to rescind by tendering the stallion back and leaving him with defendants and demanding the animals he had let them have, together with his note. Defendants rejected the

offer to rescind and this action followed for nine hundred and fifty dollars, the purchase price.

The trial court instructed the jury on the measure of damages that plaintiff was entitled to the amount of the note he gave defendants, and the market value of the stallion and jack he transferred to them. Defendants insist that the instruction was wrong as there was no evidence upon which to base it, and that when evidence was offered on the subject of value they objected on that ground. But an examination of the record shows no objection was made on that ground, or on the form of the question. The objection was that "the value of the property traded was not in controversy." Grounds of objection not presented to the trial court cannot be allowed on appeal. We think the instruction right; the market value of the property transferred to defendants and demanded from them was the measure of plaintiff's damage on their refusal to deliver back to him. [White v. Salisbury, 33 Mo. 150; Phares v. Lumber Co., 118 Mo. App. 546, 555, 556; Spangler v. Kite, 47 Mo. App. 230, 232.]

The evidence failed to show that the stallion could not get sixty per cent of mares served with foal. There was a faint effort in that direction, confined to three mares, and the failure shown appeared to be the fault of the mares. So, practically, it can be said that no proof at all was made of that alleged breach of warranty; and so the court instructed at the request of defendants.

As not infrequently happens there was much in the trial seemingly taken for granted, which has left the record not as clear as we would like to have had it. The warranty of soundness was broken in the fact of the horse being blind in one or both his eyes. So the warranty of being a good breeder was broken, without reference to the percent of foals, if it be true that being blind made him a poor breeder; and it seems the evidence tended to prove that it did. We

cannot say from the record whether it was meant that being blind was the result of a bodily ailment that likewise made him impotent; or whether it is intended to say that being blind was a defect which kept people from breeding their mares to him. He would not be good for breeding purposes in either of these instances. Fortunately for plaintiff, whatever lack of clearness of meaning there may be, it is not of such a character as to interfere with the judgment he recovered. For if the horse was not fit for a breeder, either from impotency or blindness, the warranty was broken.

Again, the record, particularly the instruction, put a burden on plaintiff he need not have borne. It submits to the jury whether the horse was "worthless" as a breeder. He did not need to be wholly worthless before breaching the warranty. He was not warranted not to be worthless; he was, at least, warranted to be a breeder, and that would mean an ordinary or reasonably good breeder. A fraudulent warranty of that sort would justify tendering the animal back and demanding restoration of the *status quo,* which, if the latter is refused, would justify an action for damages. Again, plaintiff's instruction No. 1 put the burden on him of proving "that said stallion was wholly worthless for breeding purposes *and* was blind in one eye." It was not necessary to his recovery that he should have proved both these breaches.

In plaintiff's instruction No. 1, the hypothesis of the stallion failing in the warranty of getting foals in sixty per cent of the number bred to him, was submitted to the jury. This was error, because, as we have seen, there was no evidence to justify it. But in the circumstances here, it was a technical and harmless error. For the court, at defendants' instance, withdrew that issue from the jury in a subsequent instruction.

We are satisfied that no error was committed materially affecting the merits of the action, and we therefore affirm the judgment.   All concur.