IRVIN *v.* LOCKE.

No. 15413. APRIL 2, 1946. REHEARING DENIED MAY 10, 1946.

*Nelson & Nelson,* for plaintiff in error.

*J. A. Merritt* and *R. M. Daley,* contra.

JENKINS, Presiding Justice. Mrs. W. F. Locke brought a suit for specific performance on an alleged contract, signed by both parties, and executed in duplicate, which was as follows: "Georgia, Laurens County. This agreement, made and entered into this 4th day of December, 1940, between Mrs. W. F. Locke, party of the first part and J. E. Irvin, as party of the second part, both parties of said State and county, Witnesseth: That the said party of the second part, upon the payment of $608.55 on or before July 1st, 1943, by the said party of the first part, the said J. E. Irvin will then and there execute to the said Mrs. W. F. Locke title papers upon which the said Mrs. Locke will then be obligated to pay an additional sum of $608.55, the time and method to be determined then, upon the following described property, to wit: One

hundred and thirty-six acres of land more or less, in the 12th land district of said State and county, being known as the Steel Place, bounded as follows: north J. B. Burch place, east by G. N. Weatherly, south by Mrs. Dena Dreyer, west by Pink Steels. All of the sums named above to bear interest from this date at the rate of 8% per annum. This agreement is made in duplicate, and each duplicate, it is agreed, shall be original evidence of the agreement. In witness whereof, the said parties have hereunto set their hands and affixed their seals, the day and year first above written."

The defendant demurred to the petition generally, and specially for several reasons, all of which were cured by amendment, except as to the grounds: that the petition shows on its face that the plaintiff was not entitled to the equitable remedy of specific performance; that the contract was too vague and uncertain to be enforced; that it was unconscionable, in that it provided for no down payment; that any rights that the plaintiff may have had thereunder were shown by the petition to have been forfeited; and that the tender, as set forth in paragraphs 10 and 13 of the petition, which are set forth in the opinion, was inadequate as a matter of law. Exceptions were taken pendente lite to the overruling of the demurrers. On the trial, the defendant introduced evidence as to the tender, which also will be set forth in the opinion. A verdict was rendered in favor of the plaintiff, and a decree for specific performance was entered. Exceptions are now taken to the overruling of the defendant's motion for a new trial.

1. "Equity will decree specific performance of a written contract to convey land, which is clear and definite in its terms." *Miller* v. *Watson,* 139 *Ga.* 29 (76 S. E. 585).

2. The contract sued upon is not unconscionable, in that it did not require a down payment for the land. If the vendor was willing to extend credit for the first payment, as provided by the contract, no legal obstacle prevented him from so doing.

3. The Code, § 96-101, provides as follows: "Three elements are essential to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties." The contract was not lacking in any of these ingredients necessary to an agreement for the purchase and sale of the land described.

(a) While the contract extends definite credit for the first pay-

ment, leaving the time of payment of the second installment in abeyance, the rule under the Code, § 96-106, is that, unless additional credit for the second payment should be agreed on, it would be due immediately. Accordingly, the court did not err in overruling the demurrer setting up the invalidity of the agreement sued on.

4. Under the provisions of the Code, § 20-1105, in order to constitute a valid tender, the amount of the offer must be certain and unconditional, and in full of the obligation. This section provides that the tender may be made by an agent. Paragraphs 10 and 13 of the petition, which set forth the tender, and which are specifically demurred to, are as follows: "10. That your petitioner sent her said husband to the said defendant authorizing him to tender in payment the entire sum in completing the payment of said contract to purchase the aforesaid described real estate, and that your petitioner turned over to W. F. Locke fifteen hundred ($1500.00) dollars, in cash money to be delivered to the defendant, and the same was tendered to the defendant herein named in the presence of witnesses. . . 13. That upon the tender of the $1500.00 in cash money to the defendant by W. F. Locke for your petitioner, your petitioner was only taking the defendant's word for the full amount of interest and the principal of the aforesaid contract to the date of October 30th, 1944. That on account of the attitude of the defendant, your petitioner is now petitioning the honorable court for direction and a decree, as the defendant is trying to defraud your petitioner out of her rights and the enjoyments and benefits of the aforesaid described property." The petition thus set forth an unconditional tender of a certain amount, and these paragraphs relating to the tender, alleging that the amount thus tendered was in full of the amount claimed by the defendant himself, the grounds of demurrer attacking such paragraphs are without merit.

5. The contract, dated December 4, 1940, provides that the first payment of $608.55 was to be made on or before July 1, 1943, and it is inferable from the petition that the tender of both the first and second payments was made by the plaintiff on October 30, 1944. It appears from the petition that the plaintiff was put into possession of the premises when the contract was executed, and (contrary to the facts in *Dukes* v. *Baugh*, 91 *Ga.* 33, 16 S. E.

219), had never surrendered possession back to the defendant, who, it appears had remained content with possession by the plaintiff. Under the circumstances thus set forth by the petition, had the plaintiff forfeited all rights under the contract by her failure to comply promptly with the terms of the contract relating to the time fixed for the first payment under the terms of the credit extended? This ground of the demurrer is without merit. The Code, § 20-704 (9), provides: "Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so." Accordingly, although the defendant did not promptly meet the first of the two payments under the contract on the date specified, the court did not err in overruling the demurrer setting up a forfeiture for that reason of the plaintiff's rights under the contract.

6. On the trial, the plaintiff's agent testified as to tender as follows: "About October 25, 1944, I had a conversation with John (the defendant), along then somewhere, as to what I owed him on this place. He said I owed him about $1500, but he wouldn't accept it at that low interest. I got $1500 that John said I owed him on this 136 acres of land; Mrs. Locke turned it over to me to go over and tender it to John, and he refused to take it. I said, 'I come to bring you the money,' and he said, 'how much,' and I said '$1500, that is what you said I owed you;' and he said, 'Put another $1000 with it, and I will take it and give you a deed.' I did tender him the $1500 that he said I owed." On cross-examination, he testified: "The form of the money was paper money. I carried it to John in a six-pound paper sack, about this long and that wide (indicating) and as thick as a paper sack. As to the denominations of the bills, they were 20's, 10's, 5's, and 1's, all kinds; there were no 100's, and I don't think I had any 50's. It was in the daytime, about nine or ten o'clock in the morning. We assembled the money and put it in a paper sack at home the night before, me and my wife counted it, and I know how much was in it; $1500 exactly. We got to John's house that morning between nine and ten o'clock. I did not count the money out to John, I offered it to him to count it. I offered him the sack and he said he didn't want it. . . It was not Sunday, but I disremember whether it was the first of the week or the last. As to my showing John the money, I pulled part of it out of the sack and said,

'John, here is the money, I have come to pay you;' and he said, 'How much?' and I said '$1500, that is what you said you wanted;' and he said, 'Put another thousand dollars with it and I will take it and give you a deed.' I said, 'Here is the deed, John, and the money, I brought a deed with me.' As to my demanding that he sign the deed before I gave him the money, I told him to get his book and figure it up, that 'You said it was $1500, and I have that; I brought a deed with me, and we will have to go to Cadwell and get it witnessed.' As to my not leaving the money under any other conditions, only that he sign the deed, I would have left it there for him to go to Cadwell to sign the deed. I wanted to have a settlement then and there, and that was the condition upon which I tendered him the money. . . I tendered him the money in cash and offered it to him upon the condition that he would sign the deed."

The Code provides that a tender must be unconditional, and it has several times been held that a tender of the amount due for land sold under a bond for title, with a condition attached to the tender that the obligor make a deed in accordance with the bond, is not a good and unconditional tender. *DeGraffenreid* v. *Menard,* 103 *Ga.* 651 (30 S. E. 560); *Morris* v. *Continental Ins. Co.,* 116 *Ga.* 53 (42 S. E. 474); *Terry* v. *Keim,* 122 *Ga.* 43 (49 S. E. 736). It thus appears from the evidence of the agent making the alleged tender, when taken in its entirety, that is, on both direct and cross-examination, that the tender was, while originally unconditional and as such rejected, ultimately made conditional, in that the vendor was required to execute the deed called for by the bond. There was, therefore, under the decisions last cited, a variance between the allegata in the petition and the probata adduced on the trial; and the evidence, thus varying from the allegata of the petition, could have been objected to as failing to conform. However, this was not done, and the evidence was admitted without objection. Had the evidence been objected to, the plaintiff, without adding a new and distinct cause of action, could have amended her petition, by alleging that upon the outright tender being made, the defendant refused it unless an additional $1000 was added thereto. Since the law does not require vain and useless procedure, a refusal by the obligor to accept the original outright tender in accordance with the contract, without an additional

$1000 being added thereto, dispensed with any necessity of making same; and this is true although the plaintiff might have subsequently made an additional tender coupled with the condition that the defendant would execute the deed, which the defendant refused to do for the reason given that an additional $1000 was required. *Ansley* v. *Hightower*, 120 *Ga.* 719 (4), (48 S. E. 197). Under such circumstances, the failure of the defendant to object to the testimony dispensed with the necessity of amending her petition by setting forth the absence of a necessity for tendering, and the case stands as if the petition had been amended accordingly. *Napier* v. *Strong*, 19 *Ga. App.* 401 (2) (91 S. E. 579) ; *Ocean Steamship Co.* v. *Williams*, 69 *Ga.* 251 (4a) ; *Steed* v. *Rees*, 192 *Ga.* 20, 24 (2) (14 S. E. 2d, 474) ; *Taylor* v. *Taylor*, 195 *Ga.* 711, 721 (11) (25 S. E. 2d, 506) ; *Grice* v. *Grice*, 197 *Ga.* 686, 699 (30 S. E. 2d, 183). The principle just stated in no wise conflicts with the ruling by this court in *Roberts* v. *Mayer*, 191 *Ga.* 588 (13 S. E. 2d, 382). The *Roberts* case went off on demurrer. The court held that, since the petition (contrary to that in the instant case) failed to allege either a valid tender, or facts such as would excuse a tender, the petition was properly dismissed on demurrer.

7. The foregoing rulings deal with the contentions of the plaintiff in error, except the assignments of error relating to the charge; but, since the evidence was not in dispute and, under the rules announced, a verdict was demanded in favor of the plaintiff, it is unnecessary to consider such assignments of error.

*Judgment affirmed. All the Justices concur, except Duckworth, J., who dissents.*

### ON MOTION FOR REHEARING.

Capable counsel for the plaintiff in error filed a motion for rehearing, in which they attack the ruling in the original opinion that the tender was originally unconditional, but ultimately made conditional; the contention being that there was but one continuous, connected, and uninterrupted transaction. The opinion expressly recognizes that the tender, when all the conversation relative thereto is taken together, must be taken as conditional. The ruling is not planted on the proposition that two tenders were made—one unconditional, one conditional. The ruling is that the entire conversation between the agent and the defendant, when taken all together, shows two things: first, a tender was made,

which was originally unconditional in form, but later, in the same conversation, was made conditional, and that it must therefore be treated as conditional; second, that the defendant, having refused the tender while still in unconditional form, must be taken as having *waived* an unconditional tender. In other words, the tender when taken all together, being conditional, the plaintiff cannot rely upon an unconditional tender; but he can rely upon a waiver of such a tender, in that the defendant indisputably showed that an unconditional tender, if made, would have been rejected. This is true because he flatly rejected the tender while it still remained in unconditional form. As set forth in the opinion, it appears from the evidence of the agent making the tender for the defendant in error, that, the agent, procured the $1500, which was the amount that the vendor had stated to be the sum due, and went over to see the vendor, whereupon the following conversation occurred: "I come to bring you the money, and he said 'How much?', and I said, '$1500, that is what you said I owed you,' and he said, 'Put another $1000 with it, and I will take it and give you a deed.' I did tender him the $1500 due that he said we owed him." If the original words of the defendant meant anything, they meant that he would not accept the money at all unless an additional $1000 was added to it. The fact that the agent in the same conversation, as shown on cross-examination, may have later coupled the tender, already rejected, with a condition, does not nullify the fact that the defendant had flatly refused to accept the amount of $1500 at all. As we construe the record, this testimony is undisputed. True enough, as brought out in the motion for rehearing, the agent by his own testimony showed that he afterwards attached a condition to the already-rejected tender; true enough the three other disinterested witnesses for the plaintiff, without attempting to set forth the orderly sequence of the conversation, all show in effect that in its final analysis the tender was a conditional one, and that it was rejected unless another $1000 was added. But no one disputes the testimony as quoted. No one even now disputes the fact that the tender (however it was made) was rejected. The defendant himself, while disclaiming any recollection as to the *reason* for his rejection, admitted that he "could have said it," that is, could have given as his reason that he required another $1000. However that might be, what the agent originally said is

not denied, and the defendant himself admits that he *might* have called for another $1000, while testifying that he gave two other reasons for his rejection—namely that he wanted to give the farm to his wife and did not want to sell it at all, and the other reason being that the plaintiff had "kept breaking his contract." Under any view, it is not denied by anyone that the agent, to begin with, offered the $1500 as testified to by him, and that the defendant vendor flatly refused to accept the same, either for the reason testified to by the agent and the three other witnesses; or, according to the defendant's evidence, for that reason or for either of the two other reasons assigned by him. The only point of importance is that, to begin with, the amount called for by the contract was tendered, *and before any condition was added, was refused outright.* The conversation as a whole made the tender conditional under the rulings of this court cited in the opinion; and, as pointed out in the opinion, these decisions have gone so far as to hold that, under the Code, § 20-1105, a tender is conditional even when made in strict compliance with a contract, and without any independent condition being added thereto. The movant strongly urges the testimony of the three witnesses introduced by the plaintiff as showing that the tender was conditional. We had already held in the opinion that, taken as a whole, both the evidence of the agent and that of her witnesses show that the tender *was* conditional. Therefore we are unable to see how the testimony of the plaintiff's three witnesses amounts to anything more than what the agent himself had testified to; and the only effect of this testimony is to corroborate what the agent had already said.

In addition to what has already been said, we think that the case comes also squarely within another and different rule, when taken in connection with the rule already stated with respect to the waiver of an amendment to comply with evidence admitted without objection. This additional principle, often stated by this court and the Court of Appeals, is that: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and different consideration. . . . He is estopped from doing it by a settled principle of law." *Fenn* v. *Ware,* 100 *Ga.* 563, 566 (28 S. E. 238). Thus, even if the tender had been invalid as being coupled with a condition, as

now for the first time claimed, even then—since the vendor, as shown by the testimony throughout, gave as his reason for not accepting the money either that he wanted an additional $1000 added thereto, or that he wanted to give the property to his wife, or that the plaintiff had "kept breaking the contract," and in refusing expressly showed that he was in fact ready to make a deed except for the reason or reasons stated—the infirmity now charged with respect to the tender must be taken as having been waived; and he cannot now, after litigation has begun, fall back upon another but expressly repudiated reason for his conduct. As stated in the opinion just cited, in dealing with a somewhat similar situation, "Possibly if she had said that she was not willing to accept the notes with the signature of but one of the parties to whom she undertood she was selling, the objection would have been removed. At any rate, by placing her refusal upon the ground stated, she should be treated as having waived the other things then known to her which were not brought forward as grounds of objection until she was sued."

A motion for nonsuit under all the evidence adduced is not, as now contended, the equivalent of an objection to the admissibility of the evidence, which has been referred to, when it was offered, nor is it the equivalent of a motion to exclude such testimony. A motion for nonsuit challenges the legal sufficiency of all the evidence admitted, when taken together, to authorize a finding in favor of the party who relies upon it; while an objection to the admissibility of any particular testimony, or a motion to exclude the same, seeks to even preclude its consideration. Accordingly, the case falls within the principles just announced, with the result that, even though nothing appeared but the rejection of a conditional tender for the reason or reasons stated, the vendor would nevertheless be estopped from relying upon any reason for refusing the tender other than those specifically given at the time the tender was made. Especially would this be true where as here the reason now given for attacking the tender was expressly negatived at the time the tender was made.

*Motion denied. All the Justices concur, except Duckworth, J., who dissents.*