GLOVER *v.* CENTRAL INVESTMENT COMPANY.

1. The judge did not abuse his discretion in refusing to grant an unconditional injunction.
2. The assignments of error relating to the admission of testimony were not argued in the briefs, and are treated as abandoned.

Argued November 14, 1908. — Decided July 15, 1909.

Petition for injunction. Before Judge Ellis. Fulton superior court. June 29, 1908.

*Hines & Jordan* and *Daley & Chambers,* for plaintiff, cited, on tender: Civil Code, §3728; 39 *Ga.* 597; 18 Am. & Eng. Enc. L.

724; 90 N. Y. 442; 5 Yerg. (Tenn.) 199; 17 Fed. 776; 1 Atk. 165; 1 Robt. (N. Y.) 160; 41 Minn. 146. Equitable relief: 134 Ala. 420; 162 Ill. 426; 10 Ohio, 501.

*E. V. Carter, J. D. Bradwell,* and *E. L. Douglas,* for defendant, cited, on tender: 22 Am. & Eng. Enc. L. 533; 28 Ib. 31, 39, 41, 42; Hunt on Tender, §§278, 310, 418, 431; 83 N. W. 44; 42 So. 49; 7 Wall. 447; 41 N. Y. S. R. 477; 9 How. Pr. 402; 37 Pac. 164; 38 U. S. 136; 134 U. S. 818; 60 Ind. 420; 98 Tenn. 421 (7 L. R. A. 89); 12 Mass. 172; 40 Mich. 668; 41 Mich. 371; 86 Ill. 431; 91 Mich. 1; 49 Mich. 90 (13 N. W. 370); 63 Minn. 485; 69 Ala. 372; 77 Am. D. 468; 22 Am. R. 612; 16 Am. St. R. 679; 1 Am. D. 22; 3 Am. D. 386; 55 *Ga.* 53; 62 *Ga.* 596; 84 *Ga.* 561. Equitable relief: 125 *Ga.* 408, 830; 9 *Ga.* 137; 59 S. W. 1000; 89 Mo. 375; 116 N. C. 1 (33 L. R. A. 231).

EVANS, P. J. Charles P. Glover borrowed of the Central Investment Company $6,600, and gave to it his two notes, one for $4,500 and the other for $2,100, due January 9, 1908, and payable at the Atlanta National Bank, with interest coupons attached. These notes were secured by a pledge of 95 shares of stock of the American Cast Iron Pipe Company. The day before the maturity of the notes Glover offered to pay to E. L. Douglas, the president and manager of the Investment Company, the principal and interest of the debt, which offer was declined by Douglas. On the next day, January 9, Glover having paid the interest coupon note to the teller of the Atlanta National Bank, came to the office of the Investment Company, and stated that he had brought with him $6,600 for the purpose of paying his notes. Douglas and Glover do not agree as to what transpired on that occasion; the latter claiming that he made a legally sufficient tender, and the former denying such claim. Glover demanded of Douglas the pledged stock, and, on Douglas's refusal to deliver it, instituted his action of trover and bail against the Investment Company to recover it. The defendant refused to deliver the stock to the officer serving the writ or to give the bond. The Investment Company then advertised the stock for sale; whereupon Glover filed an equitable petition, ancillary to his trover suit, to enjoin the sale, and to impound the stock with a receiver until the rights of the parties were judicially ascertained. A hearing was had on the rule to show cause, and the court restrained the

defendant "from selling the collateral named in the petition for thirty days, . . said injunction to be dissolved upon tender of the principal and interest due on the sixty-six hundred dol- lars . . indebtedness of the plaintiff to the Investment Com- pany, . . and upon acceptance of the amount of principal and interest, and delivery to the plaintiff of the collateral. In the event of tender as above stated, and a refusal to accept the same, or to deliver the collateral, the restraining order is continued until the final hearing of the cause. . . In the event that no tender is made as stated above in this order, the injunction will, at the end of thirty days from the date hereof, stand dissolved. The tender above referred to may be put into execution and effect by making the same at the Atlanta National Bank, the place where the notes referred to are payable." Exception was taken to this order by Glover.

There is a sharp conflict in the testimony as to what occurred between the pledgor and pledgee at the time the former claims he made a tender of the debt. The pledgor testified that he ten- dered lawful currency which he had in a bag with him at the office of the pledgee, and that the pledgee declined his tender solely because of the exaction of an additional sum of money for the payment of which the pledgor was not responsible, and for which the collateral was not in any sense a security. On the other hand, the president of the pledgee company denied that there was any actual tender of the money, and also stated that he did not know that the interest note had been paid at the time of the alleged tender; and that he declined to accept the payment of the prin- cipal in full discharge of the debt and relinquishment of the col- lateral, partly because he had no information that the interest note had been previously paid, and partly because, under an arrange- ment with a third party for the renewal of the loan (to which he claimed the pledgor was a party) he was entitled to a fee of $175 for his services as an attorney for having arranged for a renewal of this same loan. It also appeared in evidence that on the same morning, within a short time after the alleged tender was made, the pledgee informed the pledgor that the principal notes were at the Atlanta National Bank, and upon the payment of $6,600 the notes as well as the collateral would be delivered to the pledgor. The pledgor admitted that he received this notice

later in the day, but not until he had instituted his suit in trover to recover the collateral. It was not claimed that any tender of the principal had ever been made at the bank.

It is a general rule that if a contract be made to pay money at a certain place, a tender, to be effective, must be made at such place, as the place of payment is an essential part of the contract. Hunt on Tender, §310. So that, in order for the pledgor to insist on his tender at a place other than that provided in the contract, and a forfeiture of the right of the pledgee to hold the collateral after such tender, it must appear that the creditor by his conduct has waived compliance with the stipulation in the contract as to place of payment. The testimony before the judge was of such a nature that conflicting conclusions may have been drawn as to whether the creditor, by his declination to receive the principal of the debt, intended to waive payment at the place named in the contract. The right of the plaintiff to the possession of the pledged collateral is dependent upon his right to claim a forfeiture because of his creditor's refusal to accept a tender of the debt. It is true that a tender of the debt on the day it becomes due at the proper place of payment terminates the pledgee's right to retain possession of the pledge held as collateral security. *McCalla* v. *Clark*, 55 *Ga*. 53. But the judgment under review is one rendered in an equitable proceeding in aid of a common-law action, wherein the plaintiff's right to recover is based upon a forfeiture. Forfeitures are no less abhorrent to courts of equity than to courts of law; and when the foundation of a suitor's right to relief rests upon the enforcement of a forfeiture, equity certainly will not relieve him unless his legal right is clear. In the instant case there was evidence authorizing the judge to find that the tender had not been made in conformity with the contract provision, and that there had been no waiver thereof. The evidence also authorized a conclusion that the declination of the tender may have been in good faith, and that the creditor on the same day, and with no change in the status of the parties except the institution of the trover suit, informed the plaintiff that the bank at which the notes were payable would receive payment of the amount alleged to have been tendered, and deliver up both notes and securities. The terms imposed by the trial court in effect allowed the plaintiff thirty days within which to make a tender

of the amount due on the debt, and granted an injunction if the creditor refused this tender. Even though a tender of the debt will, under some circumstances, forfeit the right of a pledgee to retain the security, still it does not settle or discharge the indebtedness. The debtor still owes the pledgee the money; and the court may require him, as a condition precedent to the grant of an injunction, to tender the principal and interest due on the debt. It is a well-settled principle that he who seeks equity must do equity; and before a court of equity will hearken unto a suitor's prayer for equitable relief, he must offer to do full and complete equity to his adversary. The terms proposed by the court were fair and equitable, and the plaintiff has no just cause of complaint.

*Judgment affirmed. All the Justices concur.*