## COBBS LAND CO. *v.* COLONIAL HILL CO. *et al.*

1. Where the owner of land placed the same in the hands of experienced real-estate operators and salesmen for improvement, subdivision, and sale, under an agreement by which said operators and salesmen were to expend, by October 1, 1911, the sum of $12,000 in subdividing, platting, and grading said land, in constructing rock curbing and substantial sidewalks, and in laying sewers, gutters, and water-pipes in all streets, and in the event that sum was not sufficient for the development of the land they were to furnish an additional sum, not to exceed $3,000, by which agreement said salesmen undertook to sell the land, after subdividing it, at such price per lot as would net the owner $1,000 per acre for the entire tract, exclusive only of streets actually opened at the date of the agreement, no lot to be sold for less than $10 cash and $10 per month, with 6 per cent. interest on deferred payments, for which notes were to be taken payable to the owner, who was to execute to each purchaser a sale contract conditioned to execute a bond for title when one third of the purchase-price was paid in full, by which agreement, out of the first money received from the sale of each lot, the owner was to pay to the salesmen 5 per cent. of the purchase-price, when collected, as commissions, and all moneys received in cash or from collections of such notes were to be appropriated by the owner until he had received the sum of $1,000 per acre for the land, and all interest collected on the notes up to $80,000 was to be the property of the owner, and by the agreement the owner and salesmen stipulated that time was of the essence of the contract, and the salesmen specifically agreed and bound themselves to make the above improvements in the time agreed upon, that they would sell, before March 1, 1913, such an amount of said land as would net the owner in cash and notes $50,000, and that they would sell, between March 1, 1913, and March 1, 1914, such an additional amount of said land as would net the owner in cash and notes the balance of the purchase-money he was entitled to receive as above set out, and the salesmen covenanted and agreed that should they fail to improve the land by expending the agreed sum within the time specified, or should they fail to sell such an amount of the land as would net the owner in cash

*and notes the amount of $50,000 by March 1, 1913, or should they fail to sell such an amount of the land between March 1, 1913, and March 1, 1914, as would net the owner the balance of the purchase-money he was entitled to receive under the contract, and on their failure to perform either of the above covenants, then and in that event the contract was to become void and of no effect, and the salesmen were to forfeit and be divested of any and all rights and equities under the contract; and where it was further stipulated that after the owner shall have received in cash the purchase-price of said land as set out above, and shall have received in cash or notes the value of such work as may be done by either the Town of East Point or the County of Fulton, or both, in the development of said property, not to exceed $8,000, the owner agreed and bound himself to convey to said salesmen, their heirs and assigns, by warranty deed all the land unsold at that time, and to deliver and assign to them, their heirs and assigns, all uncollected notes given for the purchase of said lots, and any money remaining in his hands derived therefrom:* Held, *that this contract did not become void and of no effect by reason of the fact that the owner did not realize from cash and notes by March 1, 1914, or within a reasonable time thereafter, the full amount of purchase-money coming to him thereunder; the promoters and salesmen having sold enough of this land by March 1, 1914, to net the owner in cash and notes the full amount of purchase-money coming to him under the contract.*

2. While a sale, by the promoters, of enough of this land by March 1, 1914, to net the owner in cash and notes the full amount of purchase-money coming to him, prevented a forfeiture of their rights under the contract, the owner was not bound to convey the unsold lots and to assign the uncollected notes to the promoters and salesmen until he had received in cash the full amount of purchase-money coming to him under the contract. While the receipt by the owner in cash of the full amount of purchase-money coming to him under the contract, or tender thereof before suit, was a condition precedent to the right of the plaintiff to have specific performance, yet, where the defendant had illegally attempted to repudiate the contract, where an accounting was necessary to determine the amount due the owner, and where the latter, by conduct or declaration, proclaimed that if a tender should be made acceptance would be refused, tender of the amount coming to the owner before the bringing of suit was excused.

3. The defendant was properly required by the decree to specifically perform its agreement, and to convey the unsold lots, and to assign the uncollected notes to the plaintiff, upon the payment by the latter of the balance of the purchase-money coming to the former under the contract.

4. The judgment of the trial judge is affirmed, with direction that the decree be so changed as to allowance of interest as is pointed out in the opinion.

No. 3898. JANUARY 16, 1924. REHEARING DENIED JANUARY 28, 1924.

Equitable petition. Before Judge Humphries. Fulton superior court. June 9, 1923.

The Colonial Hill Company filed its petition against the Cobbs Land Company, and made this case: On Feb. 25, 1911, the defendant entered into a contract with William H. Allen and Sidney E. Davidson, the material portions of which are as follows: It is dated Feb. 25, 1911, and is between the Cobbs Land Company, a corporation, party of the first part, and William H. Allen and Sidney E. Davidson, parties of the second part. It recites that the party of the first part is the owner of a described tract of land containing about 80 acres; that the party of the first part desires to have the said described land subdivided and sold; that the parties of the second part are experienced real-estate operators and salesmen, and are willing to undertake the sale and subdivision of said property; and that in consideration of the mutual agreements and benefits to be derived therfrom by the parties thereto, and in consideration of the sum of $1 cash in hand paid by each of the said parties to the other, it is convenanted and agreed as follows:

*"First:* The party of the first part hereby places in the hands of parties of the second part the above-described land for improvement, subdivision and sale.

*"Second:* The parties of the second part hereby agree and bind themselves to expend the sum of twelve thousand dollars ($12,000.00) upon said described land within seven (7) months from March 1, 1911 (in the event of death of either the said Allen or Davidson, said period to be extended to Sept. 1, 1912), in subdividing, platting, grading, and constructing rock curbing, substantial sidewalks, and laying sewers, gutters, and water-pipes in all the streets opened by them; said sum of twelve thousand dollars ($12,000) to be exclusive of the value of any work in said development that may be performed by the town of East Point or the County of Fulton, which work by the town of East Point and the County of Fulton the said Cobbs Land Company is now and has been for some time using its efforts to secure.

*"Third:* The said parties of the second part covenant and agree that in the event the twelve thousand dollars ($12,000.00) to be furnished is not sufficient to pay for the improvements necessary for the development of the land as herein specified, they will furnish from their own funds whatever additional sum, not to exceed three thousand dollars ($3,000.00), is necessary to complete the same as herein agreed.

"*Fourth:* Parties of the second part hereby agree and undertake to sell said described land after subdividing the same, at such price per lot, and under such restrictions as to use and building limits as shall be mutually agreed upon, as will net the party of the first part the sum of one thousand dollars ($1,000.00) per acre (of 43,560 square feet) for the entire described tract, exclusive only of the streets actually opened at this date. And parties of the second part further agree that the plan of subdivision is to be submitted to party of the first part and approved by it before any lots are sold, and that no sale of any lot shall be made at less than ten dollars ($10.00) cash and ten dollars ($10.00) per month, with six (6%) per cent. interest on deferred payments, for which deferred payments notes shall be taken payable to the party of the first part. The party of the first part will, upon sale of each lot, execute a sale contract conditioned to execute bond for title when one third of the purchase-price is paid, upon surrender of said contract, and warranty deed when purchase-price has been paid in full and bond for title surrendered. All lots not paid for by purchasers shall be sold at not less than the original price.

"*Fifth:* It is agreed by the parties hereto that out of the first money received from the sale of each lot the party of the first part will deliver to parties of the second part five per cent. (5%) of the purchase-price, when collected, as commissions, and all money received in cash or from the collection of the principal of the purchase-money notes is to be appropriated by party of the first part until it shall have received the sum of one thousand dollars ($1,000.00) net per acre for said land as hereinbefore agreed. And it is further agreed by parties of the second part that all interest collected on said purchase-money notes up to eighty thousand dollars ($80,000.00) is the property of party of the first part, and shall not be accounted for. It is further agreed that the purchase-money notes received for said land shall be deposited for collection in some bank or trust company to be mutually agreed upon, and parties of the second part shall at all times have the right of inspection of such collection account and the right to aid in the collection of said notes. It is further agreed by the parties hereto that in addition to the payment to party of the first part in cash out of the proceeds of the sale of said lots, said sum of one thousand dollars ($1,000.00) net per acre, as hereinbefore set out, said party

of the first part shall upon final settlement receive in cash or purchase-money notes the estimated value of the work done by the town of East Point and the County of Fulton in the development of said property, not to exceed eight thousand dollars ($8,000.00), should such work be done by them, or either of them.

"*Sixth:* It is hereby agreed between the parties hereto that time is of the essence of this contract, and parties of the second part hereby specifically agree and bind themselves that they will make the improvements set out in paragraph 2 herein, within the time agreed upon, and that they will sell, before March 1, 1913, such an amount of said land as will net to party of the first part in cash and notes the sum of fifty thousand dollars ($50,000.00); and further, that they will sell, between March 1, 1913, and March 1, 1914, such an additional amount of said land as will net to party of the first part in cash and notes the balance of the purchase-money it is entitled to receive under the terms of this contract. And said parties of the second part hereby covenant and agree that should they make failure to improve said land by expenditure of said agreed sum within the time as hereinbefore set out in paragraph two hereof, then and in that event this contract shall become void and of no effect, and parties of the second part shall forfeit and be divested of any and all rights and equities hereunder; and the parties of the second part further covenant and agree that should they fail to sell such an amount of said land as will net party of the first part in cash and notes said amount of fifty thousand dollars ($50,000) by March 1, 1913, then and in that event this contract shall become void and of no effect, and parties· of the second part shall thereupon forfeit and be divested of any and all rights and equities hereunder; and parties of the second part further covenant and agree that should they fail to sell such an amount of said land between March 1, 1913, and March 1, 1914, as will net party of the first part the balance of the purchase-money it may be entitled to receive hereunder, then and in that event this contract shall become void and of no effect, and parties of the second part shall forfeit and be divested of any and all rights and equities hereunder.

"It is further agreed between the parties hereto that after the party of the first part shall have received in cash the purchase-price for said land as set out in paragraph five hereof, and. shall have

received in cash or notes the value of such work as may be done by either the town of East Point or the County of Fulton, or both, in the development of said property as agreed in paragraph five hereof, then party of the first part agrees and binds itself to convey to parties of the second part, their heirs and assigns, by warranty deed all the land remaining unsold at said time, and deliver and assign to them, their heirs and assigns, all uncollected notes given for the purchase of said lots, and any money remaining in its hands derived therefrom.

"It is further agreed that during the continuance of this contract parties of the second part are to pay all taxes that may become due and payable on said property after December 31, 1911; and they further agree that they will, within five days from the date of the signing of this contract, execute and deliver a bond with good and sufficient security, to be approved by party of the first part, in the sum of ten thousand dollars ($10,000.00), conditioned to pay all bills for repairs and materials used in the improvement and development of said property made by parties of the second part as described herein, and to hold said party of the first part harmless from any and all claims, liens, or charges arising from such improvements and developments; and it is expressly agreed and understood that this contract shall not become binding upon party of the first part until said bond is given and approved.

"It is expressly agreed between the parties hereto that this contract and agreement is nontransferable by any of the parties hereto. This not to prevent performance by heirs or personal representatives in case of death of either party of the second part.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written in triplicate, the party of the first part signing by its president and its corporate seal being attached by its secretary under resolution of the stockholders and directors authorizing same."

On Sep. 20, 1911, with the consent of the defendant, Allen and Davidson transferred to John S. and Frank C. Owens all their right, title, and interest in said contract. With the consent of the defendant, John S. and Frank C. Owens assigned all their right, title, and interest in said contract to the plaintiff. All the conditions set forth in said contract with reference to improvements, sales, etc., have been fully performed. Approximately $20,000 was

expended in the development of said property. Approximately $120,000 worth of land was sold, and the cash payments and notes for the deferred payments of the purchase-money, bearing interest at the agreed rate, were turned over to the defendant or deposited in the American Savings Bank, the bank selected by plaintiff and defendant for the deposit and collection of said notes. Up to the death of Frank C. Owens the right of inspection of the collection account was accorded to plaintiff or its predecessors in title; but Frank C. Owens died, and after the necessary delay resulting from administration on his estate and getting his affairs in shape, said bank was called upon for a statement, which it declined to furnish, or to allow an inspection of its books, unless permission was given therefor by the defendant, in violation of the agreement; and this left plaintiff without information as to the status of the notes given said bank for collection. Before March 1, 1911, such an amount of land had been sold as netted the defendant, in cash and notes, $50,000, and these notes were turned over to said bank as required by said agreement. Between March 1, 1911, and March 1, 1914, an additional amount of land had been sold which netted the defendant, in cash and notes, the balance of the purchase-money it was entitled to receive under the terms of said contract. In addition plaintiff spent approximately $8000 in payment of taxes, and large sums of money in advertising said property for sale, which, with the money spent for developing said land, amount to approximately $30,000.

When the war came on, the sale of land in and around Atlanta at any reasonable price became almost an impossibility. Following the war there was a great deal of activity in the sale of land, and plaintiff began to see that it was time to resume the sale of these lands, and was preparing to enter actively into the sale of said lots and to close out said development. A very large amount of said property has been sold, but it cannot ascertain how many of the notes have been paid, as the bank has refused it access to its books; and it cannot inform the court of the condition of the account between it and defendant.

More notes, by 50 per cent., were turned over to the bank than were necessary to pay the defendant the balance due on the contract price, but it is unable to say whether or not these notes have been paid. On Jan. 31, 1920, the defendant wrote to the plaintiff

a letter in which it notified the plaintiff that said contract terminated by its own terms, by the failure of Allen and Davidson, and any assignees claiming under them, to perform the obligations therein imposed on said Allen and Davidson; and that thereafter it would deal with the lands covered by said contract, not theretofore actually conveyed to purchasers, and with all notes given by purchasers for any of the lots, as its own property, freed from any claims or equities in favor of any persons claiming under said contract. Plaintiff denies that said contract was terminated by failure of Allen and Davidson and their assigns to perform within the time prescribed its obligations, or was violated except by the defendant, which caused the bank to refuse the plaintiff access to its books showing the state of the collections of the notes, and by its repudiation of said contract. The acts of the defendant are illegal, and the effect thereof is to make it impossible to sell these lands if the defendant repudiates the contract and declines to execute the contracts of sale, all of which have to be signed by it and the notes made to it. Plaintiff will be damaged not only the amount of $30,000 already expended in said project, but the difference of $3000 per acre between the agreed value of $1000 and its present value. Plaintiff prayed (a) for an accounting; that the amount of the payments on these notes be ascertained, and that the balance due the defendant be established by proper order of the court; (b) for injunction enjoining the defendant from taking possession of said land, from selling the same, or from interfering with the handling of said property by plaintiff; (c) for a decree establishing the rights of the parties under said contract; and (d) for the specific performance of said contract.

The defendant answered, admitting the execution of the contract. It admitted that Allen and Davidson undertook to transfer to John S. and Frank C. Owens the beneficial interest therein, but denied that this was done with its consent. It averred, that the Owenses undertook to transfer the beneficial interest in said contract to the plaintiff; that sales were made of a large number of lots covered by this contract, and cash and notes given therefor were turned over to the defendant, which deposited in the bank the cash to its credit and the notes for collection; that many of these notes were worthless, and much less than $80,000 was realized therefrom; that it admits that before March 1, 1911, such an

amount of land had been sold as netted the defendant in cash and notes the sum of $50,000, the notes being turned over to the bank as required by the contract, but this fact did not constitute a compliance with the contract; that up to March 1, 1914, it received cash and notes amounting to more than the amount which under the contract was to be received by it in cash and notes, but many of said notes were worthless, and it has not received the amount to which it is entitled under the contract, and said contract was not performed by Allen and Davidson nor by plaintiff; that the tract of land, excluding all streets and highways and lots which had been previously sold by it, was subdivided into 349 lots, and the acreage of the tract was 81.57 acres, for which it was to receive $1000 per acre besides interest; that Allen and Davidson and plaintiff from time to time sold 306 of said lots, of which 40 were surrendered or forfeited by the purchasers and not again sold; that 84 lots had been fully paid for, and deeds of conveyance had been made to the purchasers for 82, and there now remain outstanding contracts of sale covering 82 of said lots; that on all sales a small initial cash payment was made by purchasers, out of which commissions were paid as provided by the contract; that some of the purchase-money notes were paid from time to time, together with interest, out of the principal of which commissions were paid; that the net amount received by it on the principal amount of $81,570, which it was to receive under said contract, was about $48,000 up to March 1, 1914; that since March 1, 1914, some of the purchase-money notes had been paid, but the net amounts received on the principal thereof by defendant and cash received by it up to the present time was much less than the amount it was to receive under the contract, though prior to March 1, 1913, contracts of purchase were executed representing in cash and notes the sum of $50,000 and prior to Jan. 1, 1914, contracts of purchase were made which in cash and notes amounted to more than the aggregate of $81,570; that as Allen and Dadivson and plaintiff had failed to sell such an amount of said land prior to Jan. 1, 1914, as would net it the sum it was entitled to receive under the contract, said contract became void, and said parties forfeited all their rights and equities thereunder; that such sales of lots as were actually made were all made prior to October, 1912, with the exception of one lot which was sold in July, 1913;

that Davidson severed his connection with plaintiff in October, 1912, and plaintiff made little or no effort to make any further sales of the property, effecting only one sale, defendant executing to the purchaser a contract of sale in July, 1913; that soon after making said contracts of sale purchasers began to default in the payment of their notes, a large number as far back as 1912, a large number in 1913 and 1914, a few in 1915, a very few in 1916, and two in 1917, and there are now outstanding four contracts under which the purchasers are paying their purchase-money notes; that a great majority of said notes are uncollectible except by subjecting the lots of land for which they were given to their payment under judgments; that defendant is informed and believes that after the assignment of said contract to the Owenses either they or plaintiff as their assignee sold off some of the lots to persons whose names were never furnished to defendant; that contracts were executed by them or the plaintiff to these purchasers in their own names, and the money paid therefor actually received, the notes taken therefor in their names or the name of plaintiff, for which they have not accounted, and for this reason said contract of sale is void; that it was the duty of Allen and Davidson to pay all taxes on said lands after Dec. 31, 1911, but neither they nor the plaintiff performed this part of the agreement, the defendant having to pay the taxes for 1912; that at the date of said contract a large part of said land was situated in East Point and all of it since August, 1912; that some of the lots so sold to purchasers have never been returned for taxes in East Point or to the State and county for the years 1912, 1913, and 1914, as well as subsequent years; that a large number of tax fi. fas. have been issued from time to time by East Point against sundry of said lots; that plaintiff, through its president, caused some of said fi. fas. to be taken up by the bank of which he is an officer, and some of the fi. fas. transferred to it which are subsisting liens against said property; that by reason of these facts Allen and Davidson and plaintiff have breached and annuled said contract; that it has in its possession unpaid notes given for the purchase of said lots aggregating approximately $100,000, with no apparent prospect that they will be paid; that it will be necessary for it to free the properties from the liens of unpaid taxes amounting to many thousand dollars; that in some instances, in order to establish its

rights and title to said lots, it will be put to the necessity of litigation; that as a large number of the purchasers have not paid more than two thirds of the original purchase-price and have not received bonds for title, defendant is advised that its only remedy with respect to them will be to rescind the contracts of purchase, in which event it may become necessary for it to refund a large percentage of the money received from them on the purchase of their lots; that notwithstanding the facts above stated the plaintiff contends that said contract is a good, subsisting one, has refused to surrender it, and has filed its equitable petition for its enforcement; that plaintiff's suit for enforcement of the same creates a cloud upon defendant's title to said land; that it is impossible for it to correct all irregularities above mentioned, redeem said property from tax claims, and remedy the doubt and uncertainty concerning its right and title thereto as long as its contract is outstanding. Defendant prayed that Allen and Davidson be made parties to said suit, and that the contract between it and plaintiff be canceled as a cloud upon its title.

The case was referred to an auditor, who made a voluminous report. The plaintiff filed various exceptions to the auditor's findings of fact and of law. Among the findings of law was one numbered 7, which is as follows: "I construe the contract to mean that such sales should be made by Allen and Davidson as would net Cobbs Land Company one thousand dollars per acre 'for the entire described tract, exclusive only of the streets actually opened at this date' (Feby. 25th, 1911); that Allen and Davidson were to sell, before March 1, 1913, such an amount of land as would net the Cobbs Land Company in cash and notes the sum of fifty thousand dollars, and were to sell, between March 1, 1913, and March 1, 1914, such an additional amount of said land as would net the Cobbs Land Company in cash and notes the balance of the purchase-money; and that the sales of the land prior to March 1, 1914, must be such as that therefrom by March 1, 1914, or within a reasonable time thereafter, the Cobbs Land Company would receive as proceeds of the sales one thousand dollars net cash per acre. It is my opinion that, though time is stated to be of the essence of the contract, it is not a proper construction of the contract to hold that it means that by March 1, 1914, there must have been paid to Cobbs Land Company one thousand dollars per

acre net cash, or the rights of Allen and Davidson would be for-
feited or lost. In my opinion, if Allen and Davidson, or the trans-
ferees, had sold, prior to March 1, 1914, such an amount of the
land as that from the proceeds of the sales made by that time Cobbs
Land Company would have received the one thousand dollars net
per acre within a reasonable time thereafter, that part of the con-
tract would have been performed." To this finding of law the
plaintiff excepted on the 'grounds: (a) that the language of the
contract does not sustain this construction; (b) that the language
of the contract is contrary to this finding; (c) that under the
sales authorized by and made under the contract and turned over
to the defendant, it would take from five to seven years to collect
all the time notes, if all were paid, it would take much longer than
1914 to collect $80,000 net under the sales authorized by the con-
tract, that it was impossible to carry out the contract by March 1,
1914; and (d) that the defendant did not put this construction
on the contract, having waited six years without claiming such
construction.

The court sustained the exception to this finding of law, and
entered the following decree:

"1. That the findings of law by the auditor numbered 7 are
reversed and set aside. The court holds that the payments in
money and notes, made by the plaintiff by the dates named in
the contract were a compliance with the terms thereof. The court
further holds that the defendant, if it desired to raise the ques-
tion of forfeiting the contract after the lapse of so many years,
should have given the plaintiff an opportunity to pay the balance
claimed, before declaring the forfeiture.

"2. Further, the court holds, decrees, and adjudges that plain-
tiff is now entitled to pay the amount of the deficit as found by the
auditor, to wit: the sum of ten thousand, seven hundred, forty-
four and 98/100 ($10,744.98) dollars, and upon the receipt of
said amount, and upon the payment of said amount, the plaintiff
is entitled to a conveyance of the land described in the contract
attached to the petition, except such portions thereof already con-
veyed to purchasers, and also said conveyance shall be subject to
outstanding bonds for title and contracts of sale, and said plain-
tiff, upon said payment, is also entitled to the notes, choses in
action, and money on hand, now held by defendant arising from or

connected with sales made by plaintiff or its predecessors under said contract.

"3. It is further ordered and adjudged that the defendant have judgment against the plaintiff for the sum of ten thousand, seven hundred, forty-four and 98/100 ($10,744.98) dollars, and this sum is hereby made a lien upon the land described in contract attached to petition, and upon the notes, choses in action, money on hand, and also interest of plaintiff in said land or arising from sales made therefor. Interest to be added to said principal sum as follows: On $10,542.05, from January 30th, 1920, at 7%, being $2486.82; and on $202.93 from March 1st, 1914, at 7%, being $131.14; said principal sums to bear interest from date hereof at 7% per annum. Further, that plaintiff have a period of thirty (30) days within which to pay said sum. In default of said payment, this court will thereupon undertake to pass such further order as will protect the interests of defendant under this decree. Provided, however, that should this order be excepted to and its enforcement suspended, then said period of thirty (30) days shall likewise be suspended and said judgment shall be suspended until final judgment shall be rendered in this case.

"4. When the judgment of said balance of ten thousand, seven hundred, forty-four and 98/100 ($10,744.98) dollars with interest is satisfied, it is further ordered and decreed that the plaintiff, the Colonial Hill Company, is the holder of the title to the land described in contract attached to petition, and the title to said land shall thereby pass to and vest in the Colonial Hill Company, and the title to all land, notes, contracts of sale, bonds for title, and likewise money arising from said sales or connected with same, shall likewise pass to and vest in the Colonial Hill Company; but said conveyance shall have excepted therefrom such portions of said land as has already been conveyed by deed to third parties, and shall also be subject to any outstanding bonds for title or contracts of sale for portions of said land.

"It is furthermore ordered and decreed that when said balance above named is satisfied, the defendant, the Cobbs Land Company, shall convey by deed to plaintiff, the Colonial Hill Company, the land described in contract attached to petition, with the exception of the portions of same already conveyed to third parties, and shall further transfer and assign to the Colonial Hill Company all notes,

contracts of sale, or other property held by it under said contract attached to said petition, and shall further deliver to said Colonial Hill Company any money in its hands which it has received from the collection of notes or payments on land made by third parties covering purchases of portions of the land described in said contract attached to said petition.

"5. It is furthermore adjudged and decreed that the other exceptions as to matters of law and fact, as well as exceptions to rulings of evidence, are overruled and said findings are hereby made the judgment of the court, except that the exceptions to findings of fact No. 5(C) are sustained, and said findings are reversed and set aside in order to remove any conflict with the judgment here rendered."

The bill of exceptions recites that the first paragraph of said decree and subsequent paragraphs thereof "are but the logical result of the reversal of the findings of law by the auditor numbered 7. Had said findings of law not been reversed and set aside, the court would have also disallowed and overruled the exceptions to findings of fact No. 5(C). The order and judgment reversing and setting aside said findings of fact No. 5(C) did not result from a consideration of the evidence in the case, or any part thereof, but on the contrary it was required by the first paragraph of said order and judgment of the court, and it was made solely 'in order to remove any conflict with the judgment here rendered.' Hence no part of the evidence in the case is in any wise material to a clear understanding of the errors herein complained of, the only question here being one of law, to wit: whether the findings of law by the auditor numbered 7 were properly overruled." The defendant excepts and assigns error upon paragraph 1 of the decree, on the ground that it is contrary to law, and that under a proper construction of the contract it was to receive by March 1, 1914, or within a reasonable time thereafter, $1000 net per acre in cash, and not in money and notes as held by the court; and not having done so, the rights of Allen and Davidson, as well as those of their assignee, were at an end. The defendant likewise excepts to paragraph 5 of said decree and assigns error thereon on the ground that said part of said decree is contrary to law, and that said order was but the logical result of the reversal of the finding of law by the auditor numbered 7, and that as the reversal of said

finding of law was error the reversal of said findings of fact numbered 5(C) was likewise error. The defendant likewise excepts to paragraph 3 of said final decree, in that the court erred in not allowing to the defendant interest on the principal sum found to be due it by plaintiff from March 1, 1914.

*Daniel B. Cobbs* and *Anderson, Rountree & Crenshaw,* for plaintiff in error.

*Mayson & Johnson* and *Jerome Jones Jr.,* contra.

HINES, J. (After stating the foregoing facts.)

1. We do not think that the auditor properly construed the sixth paragraph of the contract; and the court did not err in sustaining the plaintiff's exception to his seventh finding of law. Allen and Davidson agreed that they would sell, before March 1, 1913, such an amount of the land as would net the owner, "in cash or notes," the sum of $50,000, and that they would sell, between March 1, 1913, and March 1, 1914, such an additional amount of this land as would net the owner, "in cash and notes, the balance of the purchase-money it is entitled to receive under the terms of this contract." So far the language of the contract is plain, and its meaning is free from ambiguity. The word "net," in this provision of the contract, is explained by the provision in paragraph 5, under which "out of the first money received from the sale of each lot," the owner was to deliver to Allen and Davidson "five per cent. (5%) of the purchase-price, when collected, as commissions, and all money received in cash, or from the collection of the principal of the purchase-money notes, is to be appropriated by" the owner "until it shall have received the sum of one thousand dollars ($1000.00) net per acre for said land as hereinbefore agreed."

In said paragraph 6 Allen and Davidson covenanted and agreed "that should they fail to sell such an amount of said land as will net party of the first part in cash and notes said amount of fifty thousand dollars ($50,000) by March 1, 1913, then and in that event this contract shall become void and of no effect," and that they "shall thereupon forfeit and be divested of any and all rights and equities thereunder." Here again the meaning of this language is clear as crystal and free from doubt. If Allen and Davidson did not sell such an amount of land as would net the owner $50,000 "in cash and notes," by March 1, 1913, they were to

forfeit all their rights and equities under the contract. But Allen and Davidson further covenanted and agreed that should "they fail to sell such an amount of said land between March 1, 1913, and March 1, 1914, as will net party of the first part the balance of the purchase-money it may be entitled to receive hereunder, then and in that event this contract shall become void and of no effect," and that they should "forfeit and be divested of any and all rights and equities" under the contract. Here the language, "in cash and notes," was dropped; and the requirement was that Allen and Davidson should sell a sufficient amount of the land to net the owner the balance of the purchase-money. Does the language of this provision mean that these agents were to sell, during the period named, enough of this land for cash to pay the balance of the purchase-money which the owner was to receive for this land under this contract? As notes are not money, and as these agents were to sell enough of the land to net the owner the balance of the purchase-money, this requirement, standing alone, and disassociated from other provisions of the contract, would seem to require these agents to sell enough of the land between March 1, 1913, and March 1, 1914, to net the owner in cash the balance of the purchase-money. But this provision must be construed in the light of the whole contract, and especially in view of the previous provision of the contract that Allen and Davidson were to sell, between March 1, 1913, and March 1, 1914, such an additional amount of this land as would net the defendant in cash and notes the balance of the purchase-money coming to it under the contract. This fixed the obligations of these parties to the contract. They were to sell enough of this land by March 1, 1914, to net the owner in cash and notes the full amount of the purchase-money coming to it. The consequence of their failure to perform this obligation is then stated. They covenant and agree "that should they fail to sell such an amount of said land as will net" the owner "the balance of the purchase-money it may be entitled to receive hereunder, then and in that event this contract shall become void and of no effect, and parties of the second part shall forfeit and be divested of any and all rights and equities hereunder." Construing together the clause of the contract fixing the obligations of Allen and Davidson in this particular and the clause of the contract providing for the forfeiture of their rights and equities upon their

failure to fulfill this obligation, the fair construction of paragraph 6 of the contract is that there was no forfeiture of the rights and equities of Allen and Davidson thereunder if they sold, by March 1, 1914, enough of these lands to net the owner in cash and notes the full amount of purchase-money coming to it under the contract. It would be unreasonable to make that a cause of forfeiture which was not a breach of the obligation clause. The forfeiture should not be broader than the breach, and should not be declared for failure of performance of something which these parties had not agreed to perform. So we are of the opinion that this contract did not become null and of no effect, and that the plaintiff, as the subassignee of Allen and Davidson, did not forfeit and was not divested of its rights and equities under this contract by reason of the fact that the defendant did not realize from the notes of purchasers of these lots, within a reasonable time after March 1, 1914, the full amount of purchase-money coming to it under this instrument.

This construction seems to be sustained by the general scope and terms of the contract. The owner was to be paid for these lots from cash received and notes taken from the purchasers thereof. The owner authorized Allen and Davidson to sell these lots for initial and deferred payments as small as $10, with 6 per cent. interest on deferred payments. With this provision in the contract, it can hardly be said that the understanding between the parties was that the owner was to realize from the cash and deferred payments the full purchase-money of this land by March 1, 1914, or within a reasonable time thereafter. Again, the owner was to have all interest on the purchase-money notes up to $80,000, and was not to account therefor. This made it a matter of moment to the owner to get cash or notes by March 1, 1914, sufficient to cover the amount of purchase-money coming to it, but not a matter of vital importance to it to get all cash by that date, as it would be getting interest on the notes taken for deferred payments. Again, the owner upon final settlement was to "receive in cash or purchase-money notes the estimated value of the work done by the town of East Point and the County of Fulton in the development of said property, not to exceed eight thousand dollars." Here is shown the willingness of the owner to take cash or notes; and this fact sheds light upon the meaning of the forfeiture provision of

the contract. Besides, the law does not favor forfeitures. They are abhorred at law and in equity. *Glover* v. *Central Investment Co.,* 133 *Ga.* 62, 65 (65 S. E. 147). All ambiguities in a contract are to be resolved against their existence, and the contract is to be so construed as to prevent forfeiture, unless a contrary construction is demanded. *Equitable Loan &c. Co.* v. *Waring,* 117 *Ga.* 599 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177). So in our opinion, when Allen and Davidson and the plaintiff expended in the improvement of this land the sum stipulated in the contract, sold enough of this land by March 1, 1913, to net the owner in cash and notes $50,000, and between March 1, 1913, and March 1, 1914, it sold an additional amount of this land sufficient to net the owner the balance of the purchase-money coming to it under the contract, they fully complied with the obligations assumed by them under paragraph 6 of this agreement; and the contract did not become null and of no effect, and they were not divested of their rights and equities thereunder by reason of the fact that the owner did not realize from the cash and notes the full amount of purchase-money coming to it under this contract by March 1, 1914, or within a reasonable time thereafter.

2. But under this contract the owner was not to convey to Allen and Davidson or their assigns the land remaining unsold on March 1, 1914, if by that time they or their assigns had sold enough of said land to net the owner in cash and notes the amount of purchase-money coming to it under the contract. In the contract is the stipulation, "that after the party of the first part shall have received in cash the purchase-price of said land as set out in paragraph five hereof, and shall have received in cash or notes the value of such work as may be done by either the town of East Point or the County of Fulton, or both, in the development of said property as agreed in paragraph five hereof, then party of the first part agrees and binds itself to convey to parties of the second part, their heirs and assigns, by warranty deed all the land remaining unsold at said time, and deliver and assign to them, their heirs and assigns, all uncollected notes given for the purchase of said lots, and any money remaining in its hands derived therefrom." The owner, under this agreement, was not to convey the remaining unsold land and assign the uncollected purchase-money notes to these parties, or their assigns, until it had received in cash

the purchase-price of this land. The sale of enough of this land by March 1, 1914, to net the owner in cash and notes the amount of purchase-money which it was to get therefor under the contract, prevented the forfeiture of the rights and equities of the other parties under the contract, but did not entitle them or their assigns to a conveyance of the unsold land and the assignment of the uncollected purchase-money notes. The receipt in cash of the full purchase-money of the land by the owner was to take place before it was required to convey the unsold lots and to assign the uncollected notes. Until the owner got in cash the full purchase-money of this land, it was under no obligation to make this conveyance and this assignment. Until then the plaintiff, nothing further appearing, would not be entitled to bring suit to compel such conveyance and such assignment; and the non-receipt in cash of the full purchase-price by the owner at the time the suit was instituted would ordinarily defeat a recovery by the plaintiff. This would clearly be so if the plaintiff was under an obligation to pay to the owner the purchase-money of this land. In that case payment or tender of the purchase-money would be a condition precedent to entitle the plaintiff to specific performance. Failure to perform this condition would be an inevitable bar to recovery. *McGehee* v. *Jones,* 10 *Ga.* 127; *DeGraffenried* v. *Menard,* 103 *Ga.* 651 (30 S. E. 560). *Burkhalter* v. *Roach,* 142 *Ga.* 344 (82 S. E. 1059); Davis *v.* Gay, 16 Wall. 203, 229 (21 L. ed. 447).

So as it appears that the owner had not received in cash the full amount of the purchase-money of this land at the time this suit was begun, this fact would ordinarily defeat the plaintiff's right to a decree for specific performance. But the owner had undertaken to repudiate the contract on the ground that the plaintiff had forfeited its rights and equities under the contract. It had so written the plaintiff. Under these circumstances any tender of the balance of the amount coming to the defendant would be unnecessary. Tender by the plaintiff to the defendant of this amount was excused by the conduct of the defendant in repudiating the contract before the suit was commenced. Where the vendor, by conduct or declaration, proclaims that, if a tender should be made, acceptance would be refused, such tender of payment is excused. *Miller* v. *Watson,* 139 *Ga.* 29 (76 S. E. 585); *Burkhalter* v. *Roach,* supra.

Besides the plaintiff had delivered to the defendant, in the time fixed by the contract, notes representing the purchase-money of lots into which this land had been subdivided, far in excess of the amount of purchase-money coming to the defendant. The defendant had been receiving the proceeds arising from the collection of these notes. Plaintiff prayed for an accounting from the defendant, and that the correct amount coming to the defendant be ascertained and declared. Under these circumstances no formal tender of the actual amount due the defendant was necessary. *Wynne v. Fisher,* 156 *Ga.* 656 (119 S. E. 605). The decree fixes this amount and provides for its payment before the defendant is required to convey the unsold lots and assign the uncollected purchase-money notes.

3. We think it unnecessary to decide the question, which is discussed at length in the briefs of counsel, whether this contract is one of agency or one of purchase. This case differs from *National Bank* v. *Goodyear,* 90 *Ga.* 711 (16 S. E. 962), in which the agent was to pay all storage charges, keep the property insured for the consignor's benefit, and assume all risk of its loss or damage, and was to receive as his compensation the difference in price between what he might receive from purchasers and the invoice price at which he was to settle with his consignor. In that case there was no agreement to convey. This is true of the case of *McKenzie* v. *Roper Grocery Co.,* 9 *Ga. App.* 185 (70 S. E. 981). In the case at bar the owner agreed to convey by warranty deed the unsold lots to Allen and Davidson, or their assigns, when it had received in cash the amount of purchase-money coming to it under the contract. This fact brings this case within the ruling in *Belk* v. *Amyett,* 155 *Ga.* 388 (117 S. E. 94). If it were necessary to classify this contract in order to properly decide this case, we would be disposed to hold that it is dual in character, partly one of agency and partly one of purchase. But whether solely a contract of agency or not, under the ruling in the last-cited case, the owner can be required to specifically perform his agreement to convey the unsold lots and assign the uncollected notes, when it gets the balance of the money coming to it under the contract.

4. The auditor found that the balance of the principal amount coming to the defendant was $10,744.98, and the court by its decree awards this amount to the defendant. This amount is

made up of $202.93 of taxes which the plaintiff was to pay under the contract and which the defendant paid, of $7,430.62 for work done by East Point and the County of Fulton, for which the plaintiff was to be paid in cash or notes on final settlement, and of $3,111.43 which was the balance of the purchase-money coming to the defendant. The trial judge allowed the defendant interest on the amount paid by it for taxes, which the plaintiff should have paid, from March 1, 1914, and on the balance of $10,542.05 awarded to the defendant the court allowed interest from Jan. 30, 1920. The defendant insists that it should have interest on the whole amount from March 1, 1914. In this contention the defendant was partly right and partly wrong in claiming the interest which it should receive on the above balance. Of this balance $7,430.62 was for the work done by the City of East Point and the County of Fulton in the improvement of this property. The defendant was to receive this amount in cash and notes, not by March 1, 1914, but upon final settlement of this transaction. So the court did not err, as against the defendant, in awarding interest on this sum to the defendant only from Jan. 30, 1920; but the court did err in not allowing the defendant interest on $3,111.43, the balance of the purchase-money coming to it under the contract from March 1, 1914, it appearing that the defendant had not received in full interest on $80,000 of the notes given for the deferred payments of the purchase-money of these lots. We affirm the judgment of the court below with direction that its decree be so amended as to award to the defendant interest on $7,430.62 of the principal amount awarded to the defendant from Jan. 30, 1920, and interest on $202.93 paid by the defendant for taxes, and on $3,111.43 of said principal, from March 1, 1914. Costs of bringing this case to this court are taxed against the defendants in error.

*Judgment affirmed, with direction. All the Justices concur.*